ÁNGEL RAÚL POSTIGO, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE MAYAGÜEZ, recurrido.

*Número:* O-67-4          *Resuelto:* 8 de octubre de 1968

---

*Enrique Báez García,* abogado del recurrente. El Registrador recurrido compareció por escrito.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Este caso presenta un ejemplo claro de por qué el pensamiento hipotecarista moderno es contrario a las menciones registrales y por qué éstas—en palabras de Roca Sastre—"han sido expulsadas de los libros del Registro por la [nueva] legislación hipotecaria [española] vigente." [1]

Los hechos pueden resumirse como sigue. En el año 1932, Vicenta Valentín González, en virtud de un contrato privado de arrendamiento, construyó una casa de madera en el solar número 380 de la calle Estación de Mayagüez. En el año 1933, mediante escritura pública, se practicó la partición de bienes de Alfredo Cristy Vanell, quien en vida había sido dueño del mencionado solar, y se le adjudicó el mismo a su heredero José Alfredo Cristy Guenard.

Al inscribir Cristy Guenard el título del solar, se hizo la mención de la existencia en el mismo de una casa perteneciente a "Vicente González." Esto a todas luces fue un error

---

[1] *Derecho Hipotecario* (1948), Tomo III, pág. 346.

clerical pues el nombre correcto de la dueña de la casa era Vicenta Valentín González. El propio Tribunal Superior que conoció del asunto expresó en su Resolución que "El verdadero nombre del dueño de la estructura no era Vicente González sino Vicenta Valentín González. . . ." [2]

En el año 1936 Vicenta vendió la casa a Carmelo Rodríguez y esposa. Éstos la vendieron en el 1940 a José Cruzado y esposa y éstos a su vez la vendieron en el año 1943 a Antonia Laracuente. La última dueña de la casa hasta aquí mencionada, Antonia Laracuente, casó posteriormente con Ruperto Rivera Ocasio.

En el año 1965, Ruperto Rivera Ocasio, ya casado con Antonia Laracuente, le compró a su dueño Cristy Guenard el solar en el que estaba enclavada la casa de su esposa Antonia. Al año siguiente los esposos Ruperto Rivera Ocasio y Antonia Laracuente le vendieron el solar y la casa a Ángel Raúl Postigo, el aquí recurrente.

Al fundirse en un solo dueño—Ángel Raúl Postigo—el dominio del solar y de la casa, quiso éste liberar su propiedad de la mención antes aludida e inició en el Tribunal Superior un procedimiento de jurisdicción voluntaria encaminado a ese fin. En dicho procedimiento acreditó mediante prueba que el nombre correcto que debió aparecer en la mención era Vicenta Valentín González y no Vicente González, como por error allí aparecía, y demostró que la cadena ininterrumpida de títulos de la casa y del solar terminaba en su persona, haciéndolo así el único dueño de dichos bienes. Así lo encontró y declaró probado el tribunal de instancia.

En su Resolución de 6 de octubre de 1966 dicho tribunal, luego de exponer en detalle los hechos y de llegar a la conclusión antes dicha, ordenó al Registrador de la Propiedad que cancelase la mención que motivó estos procedimientos.

---

[2] Tribunal Superior, Sala de Mayagüez, Civil Núm. CS-66-2079, Sobre Cancelación de Mención.

A esto se negó el Registrador mediante una nota que lee como sigue: ·

"Se devuelve el documento y se suspende la inscripción del mismo por que [*sic*] el titular de la mención de casa que se pretende cancelar no fue citado ni oído en el procedimiento de cancelación, extendiéndose en su lugar nota de suspensión por 60 días al margen del asiento de presentación número 440 folio 220 del Diario 267."

■ Como se sabe, "la mención es una mera noticia que hace el registrador de la existencia de un derecho no inscrito." *Miranda* v. *Registrador*, 45 D.P.R. 396, 397 (1933). "En sentido registral"—dice Roca Sastre—"mención es la mera indicación que de la existencia de una carga o gravamen sobre una finca, se efectúa en un asiento relativo a la misma." (3) Casso Romero la llama "la alusión, hecha en un asiento, a un derecho real o personal distinto del que lo motiva." (4)

■ A tenor con el texto vigente de nuestra Ley Hipotecaria de 1893—Art. 29; 30 L.P.R.A. sec. 54—cualquier derecho real que se mencione expresamente en las inscripciones o en las anotaciones preventivas, surtirá efecto contra tercero. Y, desde luego, para cancelar un derecho real así mencionado es necesario que concurra el consentimiento de la persona a cuyo favor se hizo la mención o el de sus causahabientes o representantes legítimos, *Valcárcel* v. *Registrador*, 75 D.P.R. 982 (1954), o que éstos hayan sido vencidos en juicio y así lo ordene el tribunal competente. *Puffer* v. *Registrador*, 61 D.P.R. 40 (1942). El estado de nuestro derecho hipotecario vigente, es pues, que la mención sólo se extingue mediante su cancelación formal. Está protegida registralmente y no puede desconocerse su efecto mientras figure en el Registro.

---

(3) Obra y tomo citados en el escolio 1, pág. 346.
(4) *Derecho Hipotecario*, 4ta. ed. (1951), pág. 555.

Lo anterior debe entenderse atemperado por lo dispuesto en el Art. 388-A de la Ley Hipotecaria, incorporado a dicha ley en el año 1923, sobre cancelación de asientos. 30 L.P.R.A. sec. 703. Dicho artículo dispone, *inter alia*, que los Registradores de la Propiedad, a instancia de parte, procederán a cancelar cualesquiera menciones de derechos reales que consten en los libros del Registro, si hubiesen transcurrido más de diez años desde que se verificó la mención, cuando la parte interesada dentro del plazo de seis meses en que empezó a regir dicho artículo, no hubiese solicitado la inscripción del derecho mencionado o no hubiese promovido acción judicial en reclamación de su derecho y anotado la demanda en el Registro.

Si en el caso de autos se pretendiese sencillamente cancelar una mención correctamente hecha, el Registrador tendría razón.[5] Pero la realidad es un poco más compleja. Este recurso surge porque la mención se constituyó erróneamente desde el principio. Como señala Roca Sastre, hay situaciones—y el error es una de ellas—en que el tercero adquirente no viene obligado a soportar la carga que le impone la mención. Al discutir el alcance del efecto de perjudicar a tercero propio de ésta, explica dicho autor:

"[L]a mención de un derecho no supone que el tercer adquirente de la finca deba necesariamente y en todo caso soportar o tolerar la actuación de dicho derecho. . . . Así, dicho adquirente podrá impugnar el derecho mencionado, demostrando que nunca se ha constituído, *o que se constituyó mal* o que ya está extinguido; *tiene una acción de contradicción dirigida a rectificar el Registro,* cuando éste por medio de la mención dé como vigente un derecho que en la realidad jurídica no existe."[6] (Énfasis nuestro.)

---

[5] Como la mención en este caso no tiene más de diez años de haber sido inscrita, el peticionario no puede prevalerse todavía de lo dispuesto en el apartado (a) del citado Art. 388-A de la Ley.

[6] Roca Sastre, *Derecho Hipotecario* (1948), Tomo III, pág. 377.

■ Se trata aquí, en esencia, de la impugnación de una mención errónea, lo cual planteó la cuestión de hecho de si el nombre correcto del dueño de la casa era Vicenta Valentín González o Vicente González. Luego de oir prueba, el tribunal de instancia, en el ejercicio de su función judicial, hizo sobre el particular la determinación que ya antes hemos dicho. Esa determinación judicial de hecho obliga al Registrador y éste no puede cuestionarla. Como hemos expresado antes, el Registrador no puede sustituir su criterio por el del Tribunal en cuanto a las determinaciones de hecho. *Báez v. Registrador*, 74 D.P.R. 813 (1953); *Bermúdez v. Registrador*, 74 D.P.R. 151 (1952); *Rosado v. Registrador*, 71 D.P.R. 553 (1950); *Wilcox v. Registrador*, 67 D.P.R. 475 (1947); *Santos v. Registrador*, 64 D.P.R. 801 (1945); *Herrero v. Registrador*, 63 D.P.R. 709 (1944); *Valiente v. Registrador*, 63 D.P.R. 149 (1944).

■ Habiéndose determinado judicialmente como una cuestión de hecho, como lo hizo el tribunal de instancia, que el nombre correcto que debió aparecer en la mención era Vicenta Valentín González, se desvanece el problema de si hay o no consentimiento de la persona favorecida por el derecho mencionado para la cancelación de la mención pues al Vicenta vender su casa y otorgar escritura pública a ese efecto dio necesaria e implícitamente su consentimiento para la cancelación de la mención.

Ya anteriormente al revocar la denegatoria del Registrador a inscribir la cancelación de un crédito hipotecario, cuando dicho funcionario se basaba en que en la escritura de cancelación la acreedora no había consentido expresamente a que se cancelase la inscripción de la hipoteca, nos expresamos como sigue:

"Así pues, si de los términos en que está redactado el documento puede llegarse a la conclusión de que el consentimiento fue dado de un modo indudable, entonces será suficiente para

la cancelación en el registro, aunque no se .diga que consiente en que se haga tal cancelación. No es necesario que se consigne expresamente el consentimiento, y basta el consentimiento presunto si puede deducirse de las palabras del documento de manera que no le deje lugar a duda de que se prestó."—*Hereter* v. *Registrador,* 18 D.P.R. 812, 813 (1912).

Una buena síntesis del pensamiento hipotecarista moderno, al cual aludimos al comienzo de esta opinión, la hace Casso Romero, Ex-Director de la Dirección General de los Registros y del Notariado de España. A continuación la transcribimos:

"Contra las menciones se levantó una general y justificada protesta entre los hipotecaristas, por entenderlas contrarias al principio de especialidad y por ser, además, opuestas al tráfico de inmuebles y al buen uso del crédito territorial, al quedar injustamente desvalorizadas por ellas las fincas, ya que en la mayoría de los casos aludían a gravámenes ilusorios, y además suscitaban serios problemas *para su cancelación.*

Agréguese a ello que nada justificaba la protección legal que otorgaban a titulares descuidados o negligentes, los cuales no se preocupaban de salvaguardar su derecho frente a tercero, solicitando su inscripción separada y especial.

Por eso, la reforma de 1909 ya acusó la tendencia de negar valor a los derechos 'meramente mencionados', especialmente si la mención era antigua (art. 402, L.H., 1909) ; pero la pervivencia del artículo 29 de dicha ley malogró tal propósito.

La reforma de 1944 intentó, con mayor radicalismo, suprimirlas y privarlas de efectos. Así, en la Exposición de motivos se dijo: 'Ninguna razón abona que continúen mencionándose en el Registro los derechos susceptibles de inscripción separada y especial. Su consignación en el mismo, según la forma actual, dificulta el comercio inmobiliario y el crédito territorial.' Y agregó: 'No se concibe cómo nuestro derecho, tan escrupuloso en la calificación e ingreso de los derechos inscribibles, permite que puedan adquirir naturaleza de verdaderos rangos hipotecarios, derechos inciertos, de eficacia dudosa, y muchas veces de no fácil identificación.'

·· De acuerdo con ello, el actual artículo 29 de la L. H. dispone que la fe pública registral *no se extenderá* a la 'mención' de derechos susceptibles de inscripción *separada y especial."*—Obra citada, pág. 556.

·· En vista de lo anterior y a poco que se medite sobre el asunto se puede entender por qué la nueva Ley Hipotecaria española "expulsó" de los libros del Registro a las menciones. Roca Sastre comenta:

"Los arts. 29 y 98 de la nueva ley Hipotecaria se producen en el sentido de *negar efectos* a las menciones posteriores a la referida fecha. [1 Julio 1945]. Asimismo, a contar de la vigencia de la actual Ley Hipotecaria de 8 de febrero de 1946, *ya no pueden practicarse más menciones,* toda vez que en el número segundo del art. 9.º de la misma, se ha suprimido la circunstancia relativa a las cargas del derecho que se inscriba, y que antes era de obligada expresión en las inscripciones. ·

.    .    .    .    .    .    .    .

El art. 29 de la vigente ley Hipotecaria establece que 'la fe pública del Registro no se extenderá a la *mención* de derechos susceptibles de inscripción separada y especial'.

.    .    .    .    .    .    .    .

·· Así pues, todas, absolutamente todas las menciones propiamente dichas (1) que fueron extendidas o practicadas antes del 1.º de enero de 1945, se hallan actualmente *caducadas, dejando de surtir efecto,* y sin que los Registradores las puedan consignar como cargas en las certificaciones que expidan, ni hagan referencia de ellas como gravámenes en los sucesivos asientos que practiquen.

La disposición transitoria primera bien claramente dispone que estas menciones 'caducarán y no surtirán efecto alguno.' Esta caducidad se ha producido de derecho, *ipso iure* o·automáticamente, debiendo reputarse tales menciones como si no hubieran sido hechas o practicadas."—Obra y tomo citados, págs. 368 y 382.

. La legislación hipotecaria española ha sido objeto de considerables reformas. Se le reformó en el 1909, en el 1944 y en el 1946. El Reglamento fue reformado en el 1947 y

en el 1959.(⁷) La Ley Hipotecaria de Puerto Rico, que data del 1893, aunque ha sido objeto de enmiendas necesita una reforma general. Se ha trabajado en ese sentido.

En el 1925 se presentó un Proyecto de Ley Hipotecaria (P. de la C. 226) y mediante la Resolución Conjunta Núm. 24 de ese año la Asamblea Legislativa designó una comisión a la cual le encomendó la preparación de un plan general de reformas a la Ley Hipotecaria y su Reglamento. No se efectuó dicha reforma. En el año 1948, siendo Consultor Legislativo el Juez ponente, la Oficina de Consultas Legislativas de la Asamblea Legislativa de Puerto Rico "respondiendo a la urgente necesidad de revisar y poner en orden nuestra legislación hipotecaria," publicó un *Anteproyecto de Código Hipotecario de Puerto Rico* preparado por el distinguido profesor puertorriqueño Don Luis Muñoz Morales.(⁸) Dicho anteproyecto (P. del S. 191) fue presentado en el 1950 por el Senador Cruz Ortiz Stella, pero no pudo lograrse acción entonces sobre este asunto, sin duda por su naturaleza complicada y técnica.

En 1963 el distinguido hipotecarista cubano Don Agustín Aguirre y Torrado, preparó por encomienda del entonces Secretario de Justicia, Honorable Hiram R. Cancio, un Proyecto de Ley Hipotecaria y de su Reglamento, el cual acompañó de una ponencia expositiva. El siguiente Secretario de Justicia, Honorable Rafael Hernández Colón, respaldó la realización del aludido proyecto y en el 1965 designó una Comisión para la continuación de dicho trabajo.(⁹) Haciendo

---

(⁷) Para una esquema de estas reformas véase Hernández Gil, *Introducción al Derecho Hipotecario* (1963), págs. 71–79. Hay una edición oficial de la *Ley y Reglamento Hipotecario* (1959) del Ministerio de Justicia español, con Indice General, Indice Alfabético y Tablas de Concordancias.

(⁸) Véase Rigau, "Nota Preliminar" de dicha publicación.

(⁹) Esta Comisión quedó compuesta por el Honorable Rafael Hernández Matos, Juez Asociado del Tribunal Supremo, y por los abogados Domingo Toledo Alamo, Dennis Martínez Irizarry, Osvaldo de la Luz Vélez, Arturo Reichard Zamora y Luis Mojica Sandoz.

uso de los trabajos anteriormente mencionados y de su propia iniciativa dicha Comisión preparó un *Proyecto de Código Hipotecario de Puerto Rico,* el cual fue sometido por el Gobernador a la Asamblea Legislativa en el año 1967. (P. de la C. 782.) Es deseable que la Asamblea Legislativa pueda en un futuro cercano dar atención a asunto tan importante y tan útil para la revitalización de nuestro derecho autóctono.

En lo que al asunto específico que a esta opinión concierne, el P. de la C. 782 del año 1967 recoge la mejor tendencia, sobre el particular y reafirma la doctrina de la no mención de derechos susceptibles de inscripción separada, disponiéndose su cancelación de oficio o a instancia de parte. Así, la primera de las disposiciones transitorias de dicho proyecto lee, en lo pertinente, como sigue:

"Cualesquiera menciones de derechos susceptibles de inscripción especial y separada, así como de los derechos personales, que existan en los asientos de los Registros, caducarán y no surtirán efecto alguno, siendo canceladas de oficio o a instancia de parte, aunque hubiesen sido relacionadas o referidas en títulos o inscripciones posteriores, cuando la parte interesada dentro del plazo de seis meses, a contar de la fecha en que empiece a regir este Código, no hubiese solicitado la inscripción del derecho mencionado, o no hubiese promovido acción judicial en reclamación de su derecho, anotando la demanda en el Registro."

Habiéndose resuelto por el tribunal de instancia en la forma antes dicha la cuestión de hecho sobre cuál era el nombre correcto del dueño de la casa que adquirió el recurrente, por las razones expresadas en esta opinión *se revocará la nota del Registrador y se ordenará la cancelación solicitada por el recurrente.*