Talcott Inter–American Corporation, recurrente, *v.* El Registrador de la Propiedad, Sección Segunda de San Juan, recurrido.

Número: O-74-420          Resuelto: 20 de octubre de 1975

*González & Torres,* abogados de la recurrente; el Registrador compareció por escrito.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Talcott Inter-American Corporation presentó acción de ejecución de hipoteca contra varios demandados, entre ellos,

la "Sucesión de Oscar Michelena Pou, integrada por su viuda Esther Bocanegra Vda. de Michelena, y sus hijas, Diana, Vilma, Luz María y Raquel Michelena, y David Oscar Michelena Vázquez."

La demandante obtuvo sentencia sumaria parcial mediante la cual se ordenó la venta en pública subasta de las fincas hipotecadas. Celebrada la subasta, las fincas fueron adjudicadas a Talcott y se otorgó a su favor la escritura de venta judicial.

Presentada la escritura en el Registro para su inscripción, el Registrador se negó a inscribirla en cuanto a la finca inscrita a favor de Oscar Michelena Pou por razón (1) de que de la sentencia no surge que Michelena Pou haya sido sustituido en el pleito por su Sucesión, (2) porque no se acreditó dentro del procedimiento que hubo un pronunciamiento judicial para determinar quiénes eran o son sus herederos, y (3) porque no se cumplieron los trámites exigidos por ley para la ejecución de hipotecas que gravan inmuebles que son parte de un caudal relicto.

Vamos a atender dichos planteamientos en el orden en que los hemos mencionado. El señor Registrador tiene razón en su segundo planteamiento pero no lo tiene en cuanto al primero y al tercero. Nos explicamos a continuación.

■ El primer planteamiento es el relativo a la falta de sustitución de parte. Ninguna disposición legal requiere que se demande o que se haga parte en un litigio a una persona que ha fallecido y que luego se lleven a cabo los trámites judiciales para su sustitución y entonces continuar con los procedimientos. La Regla 22.1 de Procedimiento Civil que cita el señor Registrador se refiere al supuesto de "si una parte falleciere," lo cual supone que la persona sea ya parte en el pleito o procedimiento y que después fallezca para que surja la necesidad de sustituirla. En el caso de autos Don Oscar Michelena Pou no era parte, sino que la parte es su

Sucesión, quienes son los codemandados. Vea *Federal Land Bank* v. *Registrador*, 49 D.P.R. 149 (1935).

El segundo planteamiento, relativo a la ausencia de determinación judicial sobre la condición de herederos de algunos de los demandados presenta un problema legítimo, el cual merece examen.

La disposición pertinente de nuestra Ley Hipotecaria que define qué son faltas subsanables y no subsanables, es parca y no deja expresado con claridad el asunto. Esto se debe, creemos, al origen del Art. 65 de la Ley Hipotecaria, asunto que más adelante mencionamos. Veamos ahora su texto en lo aquí pertinente.

■ El Art. 65 de la Ley Hipotecaria, 30 L.P.R.A. sec. 114, comienza diciendo que "Serán faltas subsanables las que afecten a la validez del mismo título, sin producir necesariamente la nulidad de la obligación en él constituida." Dicho texto supone que los abogados, Registradores y Tribunales han de descifrar el problema de cómo una falta afecta "la validez" del título sin que a la vez resulte nula la obligación en él constituida.

■ Más adelante nos dice dicho artículo que "Serán faltas no subsanables las que produzcan necesariamente la nulidad de la obligación." Esta segunda disposición es más clara. Si la falta tiene como consecuencia la nulidad de la obligación, aquélla será no subsanable.

Para auxiliarnos en la interpretación del citado Art. 65 de la Ley, existe el Art. 110 del Reglamento Hipotecario, 30 L.P.R.A. sec. 990. El mismo lee como sigue:

"Para distinguir las faltas subsanables de las que no lo sean, y hacer o no en su consecuencia una anotación preventiva, según lo dispuesto en las secs. 114 y 115 de este título, [Arts. 65 y 66 de la Ley] atenderá el registrador a la validez de la obligación consignada en el título. Si ésta fuese nula por su naturaleza, condiciones, calidad de las personas que la otorguen u otra causa semejante, independiente de su forma extrínseca, se considerará

la falta como no subsanable. Si la obligación fuese válida, atendidas las circunstancias dichas, y el defecto estuviese tan solo en la forma *externa* del documento que la contenga, y que se pueda reformar o extender de nuevo a voluntad de los interesados en la inscripción, se tendrá por subsanable la falta." (Bastardillas nuestras.)

¿Es externo el defecto de no haberse hecho declaratoria de herederos, o de no haberse hecho dentro del procedimiento una adjudicación judicial, previa prueba, sobre la condición de herederos de los codemandados, o de no haberse acreditado oportunamente dicha condición en el tribunal de instancia; o se trata de un defecto relativo a la "calidad de las personas," como dice el Reglamento?

■ Entendemos que el defecto en cuestión no es meramente formal, esto es, relativo a la forma externa del documento sino que se trata precisamente de la "calidad de las personas." No se ha demostrado, ni hay pronunciamiento judicial al respecto, que las personas nombradas como los herederos de Michelena Pou en efecto lo sean o que sean todos sus herederos. Es fácil imaginarse las dificultades, problemas y futuros pleitos que podría producir una situación en la cual se trajesen al pleito unos herederos y a otros no y que como consecuencia del procedimiento se traspasasen uno o varios inmuebles, los cuales luego pudiesen ser objeto de sucesivas ventas e hipotecas. La situación es incompatible con la seguridad que el Registro pretende y debe dar. *Ortiz* v. *Registrador*, 22 D.P.R. 339 (1915); *Machuca e Hijos & Co.* v. *Registrador*, 22 D.P.R. 755 (1915); *Zayas* v. *Registrador*, 36 D.P.R. 785 (1927); *Rosas* v. *A. Bruno de Vázquez*, 41 D.P.R. 143 (1930); *Vidal* v. *Mongas*, 66 D.P.R. 622 (1946) y *Correa* v. *Registrador*, 67 D.P.R. 753 (1947). Se deja sin efecto lo dicho en contrario en *Schlüter* v. *Registrador*, 37 D.P.R. 702 (1928).

Como dijimos en *Correa* v. *Registrador*, supra, a las págs. 755-756:

"De la faz de la sentencia se nota en seguida que la corte no tuvo ante ella prueba de clase alguna tendiente a demostrar quiénes eran realmente los herederos del deudor original, y que de acuerdo con la estipulación, y copiando probablemente del título del procedimiento, meramente hizo constar en la sentencia que la Sucesión del deudor estaba 'compuesta de sus padres legítimos Andrés San Miguel González y Amparo Salgado.'

No hay duda de que los herederos del finado eran solidariamente responsables de las obligaciones de éste. Tampoco la hay de que en ejecuciones de hipotecas por la vía ordinaria o sumarísima, no es menester que los bienes hipotecados consten previamente inscritos a favor de los herederos del deudor para que pueda inscribirse la escritura judicial de venta a favor del adquirente. Ni de que en casos de esta naturaleza la declaratoria de herederos no tiene por necesidad que tramitarse independientemente y en armonía con las disposiciones de la Ley de Procedimientos Legales Especiales, sino que puede presentarse prueba a tal efecto dentro del propio procedimiento ejecutivo. Sin embargo, sí es indispensable que en tales procedimientos haya prueba demostrativa de quiénes son los herederos del causante." (Citas omitidas.)

Creemos de interés señalar que la Ley Hipotecaria española no permite la inscripción de títulos con faltas. La ley española reconoce que los títulos sujetos a inscripción pueden adolecer de faltas, subsanables o insubsanables, pero no permite su inscripción. Dispone, en su Art. 19, que cuando el Registrador notare alguna falta en el título, lo manifestará a los que pretendan la inscripción, para que, si quieren, recojan el documento y subsanen la falta durante la vigencia del asiento de presentación.

Si la falta es subsanable y si el que presentó el título así lo solicita, el Registrador extenderá anotación preventiva pero siempre suspenderá la inscripción. Si la falta es insubsanable, se deniega la inscripción sin poder hacerse anotación preventiva. Art. 65, Ley Hipotecaria de España.

Nuestra ley tampoco permitía la inscripción de títulos con faltas. Fue mediante la Orden General Núm. 99 de 30 de

abril de 1900, del Gobierno Militar de los Estados Unidos en Puerto Rico, que se enmendó nuestra Ley Hipotecaria para autorizar la inscripción de títulos con defectos subsanables. Legislación posterior obsequiosa—la Ley del 1ro. de marzo de 1902—confirmó dicha enmienda y la misma ha subsistido hasta nuestros días.

Comentando dicha enmienda el conocido hipotecarista español Morell manifestó su insatisfacción con la misma y escribió lo siguiente:

"Ahora bien, si se nos pregunta si esa solución será o no más conveniente para el crédito territorial, diremos que no creemos que le favorezca, porque al fin viene a ser secuela o consecuencia de un sistema por nosotros combatido. Creemos que la inscripción debe ser la que represente el nacimiento ante todos y para todos del derecho real, y que el Registro sólo debe admitir y dar vida a derechos perfectos. Cuanto más inatacable resulte el derecho inscrito, mayor será su firmeza, mayores sus ventajas, y más seguridad debe prestar al crédito territorial." [1]

El puertorriqueño Luis Muñoz Morales, al ocuparse del mismo asunto se expresó en la siguiente forma:

"Por nuestra parte hemos sostenido, y seguimos sosteniendo, que la inscripción del título limpio o sin defectos, es precisamente lo que constituye la mayor garantía de nuestro sistema de Registro; y si por un espíritu de liberalidad mal entendido se abre la puerta a los defectos subsanables, bajo pretexto de facilitar las inscripciones, no hay razón alguna que impida un paso más para permitir la entrada a los defectos insubsanables; y entonces convertiremos el Registro en una oficina de mecanismo rutinario que podría entregarse en manos de cualquier escribiente sin preparación técnica alguna." [2]

Como eventualmente nuestra legislación hipotecaria ha de ser objeto de reformas, conviene recordar el trato superior

---

[1] *Comentarios a la Legislación Hipotecaria,* Tomo III (1917), pág. 298.

[2] *Lecciones de Derecho Hipotecario,* Tomo I (1945), pág. 36.

que a este asunto de las faltas subsanables e insubsanables da la nueva Ley Hipotecaria española. (³) Como señalamos antes, dicha ley dispone que en esos casos el Registrador no inscribirá y solamente extenderá anotación preventiva en los casos de faltas subsanables y cuando solicite dicha anotación el que presentó el título. Cuando el Registrador nota falta la manifiesta a los que interesan la inscripción y éstos, si quieren, recogen el documento con el fin de subsanarlo, si es subsanable.

El Proyecto de la Cámara 782 de 9 de marzo de 1967, trabajo meritorio de una distinguida comisión, arrastra, con algunos cambios, la enmienda a nuestra Ley Hipotecaria que originalmente se hizo mediante la Orden General del Gobierno Militar en el año 1900. Vea sus Arts. 160 y 165. Debe considerarse la deseabilidad de eliminar esas disposiciones y conformar en este extremo nuestra ley a la moderna Ley Hipotecaria de España, asunto sobre el cual nos hemos expresado anteriormente en esta opinión. Así no se inscribirían en el Registro títulos con defectos pero se permitiría su corrección antes de inscribirse.

Nos resta por discutir el tercero y último planteamiento relativo a la ley para la ejecución de hipotecas que gravan inmuebles que son parte de un caudal relicto. No es válida la posición del Registrador en cuanto a este aspecto. En esencia, sostiene, que no se dio cumplimiento a la Sec. 436 de la Ley de Contribuciones sobre Caudales Relictos y Donaciones, Ley Núm. 167 de 30 de junio de 1968, 13 L.P.R.A. sec. 5436. Dicha sección, en su apartado (a)(1), dispone que, excepto en el caso autorizado por la Sec. 312 de la Ley, 13 L.P.R.A. sec. 5312, "ningún tribunal aprobará la división o distribución, venta, entrega, cesión *o ejecución de hipoteca* sin que se deduzca y se deje depositado en corte, del producto de la subasta, a nombre del Secretario de Hacienda, el monto de la

---

(³) Vea *Postigo* v. *Registrador*, 96 D.P.R. 546 (1968) a la pág. 554.

contribución que éste haya determinado o determine es atribuible a dicha propiedad." (Bastardillas nuestras.)

■ Aparentemente entiende el Registrador que dicho precepto es aplicable al caso de autos. No estamos de acuerdo. Este caso envuelve un caudal al cual no se le aplica la vigente ley sobre caudales relictos, sino la ley anterior, la cual no contenía la prohibición relativa a las ejecuciones de hipotecas que ahora sí contiene la ley, por habérsele incluido expresamente por acción legislativa.

■ Principios cardinales gobiernan esta situación. El primero es que no se presume que la Legislatura hace cosas fútiles. Si consideró necesario incluir en el texto de la nueva ley la prohibición relativa a la ejecución de hipotecas es porque ese aspecto no estaba cubierto en la ley anterior, como de hecho no lo estaba. Basta comparar el Art. 12 de la ley anterior, 13 L.P.R.A. sec. 901, con el artículo vigente antes citado, 13 L.P.R.A. sec. 5436 (a) (1).

■ El segundo principio cardinal antes aludido consiste en que, como se sabe, la *legislación contributiva no se interpreta en forma extensiva* sino que debe interpretarse en forma justa y a tenor con sus propios y expresos términos. Lo contrario sería sancionar la oprobiosa y opresiva situación conocida históricamente como *"taxation without representation."*

Desde luego, no se trata aquí de conceder jurisprudencialmente una exención contributiva a unos y de negársela a otros. Se trata de aplicar la ley en la forma antes dicha y tal cual el Poder Legislativo la redactó y aprobó. Sabemos que al aplicar el derecho público—y el derecho fiscal es parte del derecho público—hay que tener en mente el interés general, pero parte de ese interés general es hacerle justicia a los ciudadanos. Si no, ¿para qué existen los tribunales y el gobierno en general? La función del gobierno obviamente va

más allá de barrer las calles y operar el servicio de la policía. Incluye en grado apreciable el hacer justicia.

De todas maneras, el temor de que la prohibición incluida en la nueva ley pero no incluida en la ley anterior resulte excesivamente perjudicial al fisco, se desvanece ante la realidad de que la vigente ley sobre caudales relictos comenzó a regir hace ya más de seis años, en el 1ro. de enero de 1969 (13 L.P.R.A. sec. 5532). Fue el propio legislador el que dispuso en la nueva ley vigente que la ley anterior continuase aplicándose a todos los casos en que el causante hubiere fallecido antes de la fecha de la vigencia de la ley nueva. 13 L.P.R.A. sec. 5530.

No surge del expediente la fecha en que el causante falleció pero debemos asumir que fue antes del 1ro. de enero de 1969, pues la demanda se presentó contra su Sucesión en el año 1968.

Por las razones antes expuestas, *se confirmará la nota recurrida en lo relativo a ser insubsanable el defecto de no haberse acreditado que haya habido un pronunciamiento judicial que determinase quiénes son los herederos de Oscar Michelena Pou y se revocará en cuanto a los otros dos extremos antes discutidos.*