EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| BBC Realty Inc.<br><br>    Demandante Recurrido<br><br>        v.<br><br>Juan A. Flores Galarza en su Capacidad de Secretario de Hacienda; Estado Libre Asociado de Puerto Rico<br><br>    Demandado-Peticionario | Certiorari<br><br>2005 TSPR 186<br><br> 166 DPR \_\_\_\_ |

Número del Caso: CC-2003-839

Fecha: 8 de diciembre de 2005

Tribunal de Apelaciones:

> Circuito Regional VI Caguas/Humacao/Guayama
> Panel I

Juez Ponente:

> Hon. Carmen A. Pesante Martínez

Oficina del Procurador General:

> Lcda. Irene S. Soroeta Kodesh
> Procuradora General Auxiliar

Abogado de la Parte Recurrida:

> Lcdo. Osvaldo Burgos Pérez


Materia:  Hoteles, Canon sobre uso de habitaciones.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

BBC Realty Inc.

    Demandante Recurrido

        v.

Juan A. Flores Galarza en su Capacidad de Secretario de Hacienda; Estado Libre Asociado de Puerto Rico

    Demandado Peticionario

CC-2003-839

Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.

San Juan, Puerto Rico, a 8 de diciembre de 2005.

Mediante el recurso presentado ante nos, la parte peticionaria solicita de este Tribunal la revisión de Sentencia emitida por el anterior Tribunal de Circuito de Apelaciones, que revocó una Sentencia emitida por el Tribunal de Primera Instancia. El foro primario declaró sin lugar una acción presentada por los demandantes de autos, en relación a una notificación de deficiencia contributiva por incumplimiento del pago de impuestos por ocupación de habitaciones de hoteles, hoteles de apartamento, casas de hospedaje y moteles ("room tax"), según lo disponía la

sección 2051 del Codigo de Rentas Internas de Puerto Rico, según enmendada.[1]

I

B.B.C. Realty Inc., en adelante B.B.C., es una corporación con fines de lucro, que operaba y se dedicaba al negocio de corretaje de bienes raíces y a la administración de propiedades, con licencia para dedicarse a dicho renglón de negocios bajo la ley que rige tal industria.[2] B.B.C. se dedicaba a gestionar el alquiler de propiedades en la zona de Humacao, Puerto Rico, concretamente, en el área de Palmas del Mar. La relación jurídica entre B.B.C y los propietarios de las referidas propiedades surgía de un contrato denominado "Property Owner's Rental Agreement". Este era un convenio que suscribían los propietarios de las villas y apartamentos con B.B.C. para concederle a éste la facultad exclusiva de servir como agente e intermediario de aquéllos en el arrendamiento de sus propiedades a terceras personas, bien sea por períodos semanales, mensuales o anuales. A cambio de estos servicios, B.B.C. recibía una comisión que variaba según el tiempo de duración del alquiler y la temporada del

---

[1] 13 L.P.R.A sec. 9051. Es pertinente destacar que esta sección fue derogada por la Ley Núm. 272 del 9 de septiembre de 2003. No obstante, los hechos del caso de marras son anteriores a la derogación del estatuto, razón por la cual el anterior estatuto es el que es objeto de nuestra evaluación.

[2] Sentencia del Tribunal de Circuito de Apelaciones, Apéndice del recurso de *Certiorari*, pág. 3.

año en el que se efectuaba el mismo.[3]   Cabe destacar que bajo el "Property Owner's Rental Agreement", los propietarios de las unidades podían arrendar las mismas por su cuenta, pero, en ese caso, B.B.C. tenía derecho a percibir el 15% de la renta.   El "Property Owner's Rental Agreement", permitía al dueño de la propiedad utilizar la misma cuando lo deseara, siempre que ésta no se encontrara arrendada y notificara a B.B.C., con no menos de seis (6) días de antelación, su intención de hacer uso de la propiedad.[4]

Luego de realizar una auditoria de las operaciones fiscales de B.B.C., el Departamento de Hacienda[5] señaló a la referida corporación deficiencias contributivas por el incumplimiento del pago de impuestos por ocupación de habitación, a corto plazo, de hoteles, hoteles de apartamentos, casas de hospedaje y moteles, según lo disponía la sección 2051 del Código de Rentas Internas,

---

[3] Si la unidad se arrendaba a corto plazo, es decir, a razón de semanas o meses, B.B.C. cobraba el 25% de la renta como comisión.  Por otra parte, si el alquiler era a largo plazo, B.B.C. cobraba el equivalente al canon mensual por cada año de alquiler.  Sentencia del Tribunal de Circuito de Apelaciones, Apéndice del recurso de *Certiorari*, pág. 5.

[4] Íd.

[5] Cabe destacar que la Ley Núm. 272 del 9 de septiembre de 2003, conocida como "Ley del Impuesto sobre el Canon por Ocupación de Habitación del Estado Libre Asociado de Puerto Rico" transfiere a la Compañía de Turismo las funciones que antes recaían en el Departamento de Hacienda en cuanto a la fijación y el cobro de impuestos y cánones por ocupación de habitación.  No obstante, de acuerdo a esta misma ley, todo caso que se hubiera presentado antes de su fecha de vigencia se continuaría tramitando por el Departamento de Hacienda.  13 L.P.R.A. secs. 2271-2272v.

*supra.* El Departamento de Hacienda determinó que B.B.C. tenía la obligación de retener de los arrendatarios de las villas del complejo Palmas del Mar, el impuesto sobre el canon de ocupación de habitación, establecido en el referido estatuto. Las deficiencias comprendían el período de 1994 a 1999, ambos inclusive, y ascendían a quinientos veintiún mil tres dólares con veinte y tres centavos ($521,003.23).[6] Dicha deficiencia fue señalada a B.B.C. el 5 de abril de 2000.[7] Según la notificación cursada por el Departamento de Hacienda, B.B.C. incumplió en retener y remitir a ésta el impuesto sobre el canon de ocupación de habitación de hotel, según lo disponía la sección 2051 del Código de Rentas Internas, *supra,* y su antecesora, la Ley de Arbitrios de Puerto Rico, según enmendada.[8]

El Departamento de Hacienda concluyó que B.B.C llevaba a cabo operaciones comerciales **análogas** a las de un hotel, ya que las villas y apartamentos que arrendó eran utilizados con regularidad y se mantenían abiertos para el alojamiento de huéspedes mediante un canon de arrendamiento. Posteriormente, el Departamento de Hacienda le cursó a la aquí recurrida una notificación y requerimiento de cobro.[9] En vista de lo anterior, B.B.C. solicitó reconsideración y la celebración de una vista

---

[6] Sentencia del Tribunal de Circuito de Apelaciones, Apéndice del recurso de *Certiorari*, pág. 2.

[7] Íd.

[8] Ley Núm. 5 del 8 de octubre de 1987.

[9] Notificación y Requerimiento, Apéndice del recurso de *Certiorari*, pág. 73.

administrativa. El 22 de febrero de 2002, el Departamento de Hacienda le cursó a la parte aquí recurrida una notificación final de deficiencia para los años de 1994 a 1999, ambos inclusive, por la suma de quinientos noventa y cinco mil ochenta y nueve dólares con sesenta y ocho centavos. ($595,089.68).[10] En consecuencia, el 21 de marzo de 2002, B.B.C. presentó una demanda ante el Tribunal de Primera Instancia contra el Honorable Juan A. Flores Galarza, en su capacidad de Secretario de Hacienda, en la que solicitó la cancelación de la deficiencia notificada.[11]

El Tribunal de Primera Instancia determinó que B.B.C. incumplió con su obligación de recaudar, retener y remitir al Departamento de Hacienda los impuestos por concepto de ocupación de habitación de las propiedades que B.B.C. administraba y arrendaba dentro del complejo privado de Palmas del Mar. Concluyó el foro primario, que B.B.C. llevaba a cabo sus operaciones comerciales en calidad de hostelero, dedicado a gestionar, en beneficio de los propietarios, el arrendamiento de villas y apartamentos en el referido complejo privado. El Tribunal de Primera Instancia determinó que la parte aquí recurrida incumplió con su obligación de retener a los arrendatarios el impuesto sobre el canon de ocupación de habitación de

---

[10] Notificación final de deficiencia cursada por el Departamento de Hacienda a B.B.C, Apéndice del recurso de *Certiorari*, págs. 84-90.

[11] Demanda presentada por B.B.C. contra el Departamento de Hacienda, Apéndice del recurso de *Certiorari*, págs. 57-63.

conformidad al esquema estatutario de la sección 2051 del Código de Rentas Internas, *supra*.[12]

El 8 de enero de 2003, B.B.C. presentó un recurso de apelación ante el antiguo Tribunal de Circuito de Apelaciones donde señaló al Tribunal de Primera Instancia la comisión de varios errores. La parte allí apelante arguyó que el foro primario incidió al clasificar a B.B.C. como un hotel, motel, casa de hospedaje u hotel de apartamentos, según lo definía la sección 2051 del Código de Rentas Internas, *supra.* Asimismo, alegó que el Tribunal de Primera Instancia había errado al clasificar las operaciones de B.B.C. como **análogas** a las de un hotel e imponerle el canon de ocupación hotelera a los alquileres gestionados por los apelantes de autos. El foro intermedio apelativo expidió el recurso solicitado y dictó sentencia el 21 de agosto de 2003, revocando la decisión del Tribunal de Primera Instancia. Dicho foro concluyó que las operaciones de B.B.C. no estaban comprendidas por el estatuto que facultaba al Departamento de Hacienda a cobrar impuestos por la ocupación de habitaciones de hoteles, hoteles de apartamento, casas de hospedaje y moteles o aquellos negocios que operan como hosteleros, según este término era definido por el Código de Rentas Internas, *supra*.[13] Dispuso que, en ausencia de una expresión clara

---

[12] Sentencia del Tribunal de Primera Instancia, Apéndice del recurso de *Certiorari*, págs. 371-385.

[13] Hostelero significará: cualquier persona que opera un hotel, motel, hotel de apartamentos o casa de hospedaje en Puerto Rico, incluyendo, pero sin limitarse a, el dueño o propietario de los mismos, al arrendatario, subarrendatario

por la Rama Legislativa, los tribunales deben interpretar los estatutos que imponen contribuciones a favor del contribuyente.[14] Finalmente, el foro intermedio apelativo entendió que B.B.C. no era el dueño de las propiedades inmuebles que arrendaba a terceros y que más bien actuaba como un intermediario entre los propietarios de los inmuebles y los arrendatarios de los mismos.[15] Sostuvo que B.B.C. era meramente un agente de bienes y raíces de los propietarios. El foro intermedio apelativo eximió a la aquí recurrida del pago de cualquier deuda por tal concepto, notificada por el Departamento de Hacienda.

Inconforme, el Departamento de Hacienda recurre ante nos mediante el presente recurso de *Certiorari.* Señala que el anterior Tribunal de Circuito de Apelaciones cometió el error siguiente:

> **Erró el Honorable Tribunal de Circuito de Apelaciones al revocar al Tribunal de Primera Instancia, y así concluir que las disposiciones estatutarias y reglamentarias aplicables no contemplan las operaciones de alquiler a corto plazo que realiza B.B.C. como parte de su negocio, y por lo tanto dictaminar que B.B.C. no tenía la obligación de recaudar, retener y remitir el impuesto sobre el canon de ocupación de habitación.**

---

hipotecario, tenedor, apartamentos, casa de hospedaje o motel. 13 L.P.R.A. sec. 9051(b)(1).

[14] Recurso de Apelación presentado por B.B.C. ante el Tribunal de Circuito de Apelaciones, Apéndice del recurso de *Certiorari*, pág 34.

[15] Sentencia del Tribunal de Circuito de Apelaciones, Apéndice del recurso de *Certiorari*, pág. 12.

II

A la luz de los hechos expuestos, veamos las disposiciones del Código de Rentas Internas, *supra*, que se pretendió aplicar al asunto ante nos y que facultaban al Departamento de Hacienda a cobrar un canon por la ocupación, a corto plazo, de habitaciones de hoteles, hoteles de apartamentos, casas de hospedaje y moteles. La sección 2051 del Código de Rentas Internas, *supra*, señalaba, en relación al cobro de impuestos por ocupación de habitaciones de hoteles, hoteles de apartamentos, casas de hospedaje y moteles lo siguiente:

> Se impondrá, cobrará y pagará, un impuesto de nueve (9) por ciento sobre los cánones de ocupación de habitación de **hoteles, hoteles de apartamentos, casas de hospedaje**; excepto los **moteles** que pagarán un impuesto de siete por ciento (7%)cuando dichos cánones excedan de cinco (5) dólares diarios. Cuando se trate de **hoteles** autorizados por el Comisionado de Instituciones Financieras para operar salas de juego, el impuesto sobre los cánones de ocupación de habitación será igual a once (11) por ciento. Cuando se trate de **hoteles** autorizados por la Compañía de Turismo a operar como **paradores**, el impuesto sobre los cánones de ocupación de habitación será igual a siete (7) por ciento. [16] (Énfasis suplido).

Este estatuto contemplaba las definiciones sobre las operaciones de negocios dedicados al alquiler, administración y operación de hoteles, hoteles de apartamentos, casas de hospedaje y moteles. Definía los conceptos en cuestión de la forma siguiente:

---

[16] 13 L.P.R.A. sec. 9051(a).

(1)*Hostelero*: Significará cualquier persona que **opere un hotel, motel, hotel de apartamentos o casa de hospedaje de Puerto Rico**, incluyendo, pero sin limitarse a, el dueño o propietario de los mismos, al arrendatario, subarrendatario hipotecario, tenedor, apartamentos, casa de hospedaje o motel.[17]

[…]

(4)*Hoteles:* Significará todo **edificio regularmente usado y mantenido abierto** para el alojamiento de huéspedes mediante un canon de alquiler y que **derive sus ingresos del alquiler de habitaciones.** El término "hoteles" incluirá también moteles, casas de hospedaje y hoteles de apartamentos amueblados o no, para alquiler por tiempo determinado. [18] (Énfasis Suplido).

La definición de hostelero se refería a la persona que **operaba** un hotel, motel, hotel de apartamentos o casa de hospedaje, que bien podía ser el propietario del negocio, el arrendatario, el subarrendatario hipotecario o el tenedor de los apartamentos, casa de hospedaje o motel. En cuanto a la definición de hotel, el Código de Rentas Internas, *supra*, aludía a todo **edificio regularmente usado y mantenido abierto** para el alojamiento de huéspedes mediante un canon de alquiler y que derivaba sus ingresos del alquiler de habitaciones.

Se desprendía del estatuto que la facultad del Departamento de Hacienda para imponer y cobrar impuestos a entidades o negocios que se dedicaban al negocio de alquiler de habitaciones de hoteles, hoteles de

---

[17] 13 L.P.R.A. sec. 9051(b)(1).

[18] 13 L.P.R.A. sec. 9051(b)(4).

apartamentos, casas de hospedaje y moteles, requería de una operación comercial en calidad de hostelero, o sea, operando un hotel, motel, casa de apartamentos o casa de hospedaje. La definición que brindaba este estatuto sobre lo que significaba el concepto de hotel implicaba que quien lo operaba tenía cierto tipo de control del edificio o estructura donde ubicaba el mismo. Este control bien podía ser de acceso a las facilidades del hotel o de reservarse la facultad para mantener abierta la estructura o sus anexos. No es en vano que la letra del estatuto hacía referencia a un edificio "regularmente usado y mantenido abierto".

El Tribunal Supremo de los Estados Unidos formuló, hace casi un siglo, una norma jurídica que hasta el día de hoy tiene vigencia. El Alto Foro hizo la expresión siguiente:

> En la interpretación de estatutos que imponen contribuciones, es la práctica establecida no extender sus disposiciones, por implicación, más allá del claro alcance del lenguaje usado, o ampliar su radio de manera que comprenda materias que no han sido específicamente señaladas. **En caso de duda, se interpretan estrictamente en contra del Gobierno y a favor del ciudadano.**[19] (Énfasis Suplido).

Hemos expresado que cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa.[20]

---

[19] Gould v. Gould, 245 U.S. 151. (1917).

[20] Irizarry v. J&J Cons. Prods., Co., Inc., 150 D.P.R. 155 (2000); Dorante v. Wrangler of P.R., 145 D.P.R. 408 (1998).

Con relación a la interpretación de estatutos que imponen contribuciones o impuestos, hemos expresado lo siguiente:

> Principios cardinales gobiernan esta situación. El primero es que no se presume que la Legislatura hace cosas fútiles.
>
> El segundo principio cardinal antes aludido consiste en que, como se sabe, **la legislación contributiva no se interpreta en forma extensiva sino que debe interpretarse en forma justa y a tenor con sus propios y expresos términos.**[21] (Énfasis Suplido).

A la luz de los hechos aquí en cuestión, debemos puntualizar la intención del legislador, que surge de la exposición de motivos de la Ley Núm. 120 del 31 de octubre de 1994, que aprobó y dispuso la vigencia del actual Código de Rentas Internas de Puerto Rico, *supra*. Allí quedó plasmada la intención legislativa que motivó su aprobación. Mediante dicho estatuto se estableció un mecanismo uniforme de contribuciones, impuestos y recaudos para allegar fondos al Estado, atendiendo el justo reclamo de la clase media sobre su responsabilidad contributiva[22].

El estatuto que define lo que es un corredor de bienes raíces en Puerto Rico reza de la forma siguiente:

---

[21] Talcott Inter-Amer Corp. V Registrador, 104 D.P.R. 254 (1975).

[22] La referida exposición de motivos dispone, en lo pertinente, de la manera siguiente: *Es la intención de la presente Administración lograr* **reducir la carga contributiva para los individuos y las corporaciones.** *Debe atenderse el reclamo de la clase media en el* **justo pago de sus contribuciones.** (Énfasis suplido). Exposición de Motivos de la Ley Núm. 120 del 31 de octubre de 1994, Leyes de Puerto Rico, pág. 567.

*(a) Corredor de bienes raíces:* Significará la persona natural que, poseyendo una licencia para ejercer la profesión de corredor de bienes raíces expedida por la Junta, **actúe como intermediario**, mediante pago o promesa de pago de cualquier compensación mutua y previamente convenida, entre las partes, que acuerden llevar a cabo en Puerto Rico una transacción de compraventa, promesa de venta, opción de de compra o venta, permuta, **arrendamiento**, subasta, **administración de propiedades**, o en el ofrecimiento, promoción o negociación de los términos de una venta, opción de compraventa, promesa de venta, **alquiler**, **administración**, permuta de bienes raíces localizados en Puerto Rico…" (Énfasis Suplido). [23]

Resulta evidente que el estatuto que antecede contempla la operación por aquellas personas que, actuando como intermediarios, se dedican a gestionar arrendamientos de propiedades, a cambio de un pago o una promesa de pago. De igual manera, el estatuto hace mención de que un corredor de bienes raíces también se refiere a aquella persona que actúa como administradora en el negocio de bienes y raíces. Este estatuto cobija también a las empresas que se dedican al negocio de corretaje de propiedades. [24]

Finalmente, es de suma importancia remitirnos a la Ley Núm. 272, *supra*, aprobada el 9 de septiembre de 2003, que enmendó la sección 2051 del Código de Rentas Internas,

---

[23] 20 L.P.R.A. sec. 3025(a)

[24] 20 L.P.R.A. sec. 3025(c). El apartado (c) reza de la manera siguiente: *Empresa de bienes raíces:* Significará toda sociedad o corporación que, poseyendo una licencia de bienes raíces expedida por la Junta, lleve a cabo cualesquiera de las actividades autorizadas por este capítulo a un corredor de bienes raíces.

*supra*, aprobado el 31 de octubre de 1994. En su exposición de motivos, la Ley 272, *supra*, reza de la manera siguiente:

> La revisión del pago del Impuesto reveló que, a través de los años, ha existido **confusión** con relación a la **imposición, fiscalización y recaudo del Impuesto,** en específico en el procesamiento de los códigos que identifican **el tipo de contribución cobrada al hostelero.** (Énfasis Suplido).
>
> […]
>
> En adición a lo anterior, otro de los fines de la Ley núm. 299[25] fue el de proteger a la industria turística, **definiendo, y estableciendo de forma expresa qué se considera como cánones sujetos al impuesto de ocupación de habitaciones. Esto es para evitar situaciones donde los hoteleros no tienen certeza sobre la obligación de cobrar el impuesto sobre el canon de ocupación a sus huéspedes…**(Énfasis Suplido).

La Ley 272, *supra,* que enmendó la sección 2051 del Código de Rentas Internas, *supra*, se aprobó para incluir ciertos negocios de corretaje de bienes y raíces dentro de la definición de hostelero. A esos efectos, la referida enmienda, aprobada el 9 de septiembre de 2003, añadió a los corredores de bienes raíces dentro del grupo de personas, naturales o jurídicas, que operan ciertas hospederías.[26] Al

---

[25] La Ley Núm. 299 de 1 de septiembre de 2000 introdujo una enmienda al Código de Rentas Internas con el fin de modificar la fórmula establecida para la distribución del ingreso obtenido por concepto del impuesto.

[26] De acuerdo a esta Ley, <u>Hostelero</u> significa "cualquier persona natural o jurídica que opere una [h]ospedería en Puerto Rico incluyendo, pero sin limitarse a, el dueño, agente, propietario, operador, arrendatario, subarrendatario hipotecario o tenedor de los mismos. Para efectos de esta Ley, el término agente comprenderá a aquellos individuos incluyendo, sin limitarse a, corredores de bienes raíces que gestionen el cobro de un canon de arrendamiento por concepto del alquiler de [a]lojamientos

momento de suscitarse la controversia que aquí nos ocupa, la Ley 272, *supra*, no estaba vigente.

## III

Concluimos que, las operaciones comerciales de la aquí recurrida no estaban contempladas, al momento de los hechos del caso de marras, por la sección 2051 del Código de Rentas Internas, *supra*, que facultaba al Departamento de Hacienda a cobrar impuestos por la ocupación de habitaciones de hoteles, hoteles de apartamentos, casas de hospedaje, paradores y moteles. B.B.C. era una entidad que se dedicaba a servir como intermediaria o agente entre los propietarios de las villas y apartamentos ubicados en Palmas del Mar y los arrendatarios. B.B.C. era una persona jurídica que, bajo el estatuto que regula el negocio de bienes raíces, *supra*, se dedicaba al arrendamiento y a la administración de propiedades de terceros, en este caso los dueños de los inmuebles, a cambio de una comisión. La aquí recurrida no operaba como un hotel, hotel de apartamento, casa de hospedaje, motel o parador, según lo definía la sección 2051 del Código de Rentas Internas, *supra*.

Se desprende de la exposición de motivos de la Ley Núm. 272, *supra*, aprobada el 9 de septiembre de 2003, que enmendó la sección 2051 del Código de Rentas Internas, *supra*, a su vez aprobado el 31 de octubre de 1994, que, previo a la referida enmienda, la definición de hostelero que proveía el estatuto no era clara. La Ley 272, *supra*,

[s]uplementarios a [c]orto [p]lazo para el alojamiento de huéspedes".

se aprobó para aclarar las **confusiones con relación a la imposición, fiscalización y recaudo del impuesto.** No es hasta la aprobación de la Ley Núm. 272, *supra*, el 9 de septiembre de 2003, que B.B.C. quedó advertido de su obligación de pagar al Estado el impuesto por ocupación de habitación.

Según expresamos en <u>Talcott Inter-Amer Corp. v. Registrador</u>, *supra*, es principio cardinal en nuestra jurisdicción que la legislación contributiva no se habrá de interpretar de forma extensiva. Por el contrario, la misma debe interpretarse de una forma justa, para así cumplir con sus **propios y expresos términos.** Obrar de otra forma violentaría principios básicos, de raíces firmes, en nuestra jurisprudencia y en nuestro ordenamiento civil. Hemos expresado que es regla de hermenéutica que cuando el propósito de imponer una contribución no es claro, la duda debe resolverse a favor de la no imposición de la misma.[27]

Concluimos que, **en aquellos casos en que una ley que impone contribuciones, impuestos o arbitrios es ambigua, carente de un lenguaje claro que advierta sobre la intención del legislador, la misma se debe interpretar restrictivamente en contra del Estado y a favor del ciudadano.**[28] Por consiguiente, el Departamento de Hacienda

---

[27] <u>Central Coloso v. Descartes, Tes.</u>, 74 D.P.R. 481, 486 (1953).

[28] Debemos puntualizar que este canon de interpretación restrictiva es de aplicación sólo en aquellas instancias en las que el Estado pretende imponerle al ciudadano el cobro de una contribución, impuesto o arbitrio. Véase: <u>Central Coloso v. Descartes, Tes.</u>, *supra*; <u>Plácido Longo & Cía. v. Sancho</u>, 50 D.P.R. 160 (1936). Por otra parte, esta norma

no puede, imponer el cobro de impuestos a la parte aquí recurrida.

Para los años concernidos, la parte aquí recurrida, no estaba advertida afirmativamente de su obligación de retener y remitir al Departamento de Hacienda el referido impuesto, según lo disponía la sección 2051 del Código de Rentas Internas, *supra*. No fue hasta el 9 de septiembre de 2003 cuando quedó advertido afirmativamente de ello, al aprobarse la Ley Núm. 272, *supra*, la que finalmente enmendó la sección 2051 del Código de Rentas Internas, para incluir clara y expresamente ciertas actividades de bienes y raíces, como las realizadas por B.B.C. Por tal razón, para los años de 1994 a 1999, ambos inclusive, B.B.C. no tenía obligación de retener y remitir los impuestos por ocupación de habitación hotelera al Departamento de Hacienda.

No se puede aplicar la Ley Núm. 272, *supra*, aprobada el 9 de septiembre de 2003, de forma retroactiva para incluir, lo que bajo la sección 2051 del Código de Rentas Internas, *supra*, aprobado el 31 de octubre de 1994, no se le advertía de forma clara al contribuyente.


IV

Por los fundamentos antes expuestos, confirmamos la Sentencia recurrida, emitida por el entonces Tribunal de Circuito de Apelaciones.

---

restrictiva no es de aplicación a cualquier legislación contributiva, tal como los casos de exenciones, excepciones y alivios contributivos. Véase: Texas Co. (PR) Inc. v. Tribl. de Contribuciones, 82 D.P.R. 134, 160 (1961); Berwind Lines v. Srio. de Hacienda, 113 D.P.R. 658, 660 (1982).

Efraín E. Rivera Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

BBC Realty, Inc.

    Demandante Recurrido

          v.

                      CC-2003-839

Juan A. Flores Galarza en su Capacidad de Secretario de Hacienda; Estado Libre Asociado de Puerto Rico

    Demandado Peticionario

SENTENCIA

San Juan, Puerto Rico, a 8 de diciembre de 2005.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, confirmamos la Sentencia recurrida, emitida por el entonces Tribunal de Circuito de Apelaciones.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo