B.B.C. REALTY, INC., demandante y recurrido, *v.* JUAN A. FLORES GALARZA en su capacidad de SECRETARIO DE HACIENDA, y el ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandados y peticionarios.

*Número:* CC-2003-839 *Resuelto:* 8 de diciembre de 2005

*Roberto J. Sánchez Ramos*, procurador general, e *Irene S. Soroeta Kodesh*, procuradora general auxiliar, abogados de la parte peticionaria; *Osvaldo Burgos Pérez*, abogado de la parte recurrida.

El Juez Asociado Señor Rivera Pérez emitió la opinión del Tribunal.

Mediante el recurso presentado ante nos, la parte peticionaria solicita de este Tribunal la revisión de la sentencia emitida por el anterior Tribunal de Circuito de Apelaciones, que revocó una sentencia emitida por el Tribunal de Primera Instancia. El foro primario declaró "sin lugar" una acción presentada por los demandantes de autos, en relación con una notificación de deficiencia contributiva por incumplimiento del pago de impuestos por ocupación de habitaciones de hoteles, hoteles de apartamento, casas de hospedaje y moteles ("room tax"), según lo disponía la Sec. 2051 del Código de Rentas Internas, según enmendada.[1]

I

B.B.C. Realty Inc. (B.B.C.) es una corporación con fines de lucro que operaba y se dedicaba al negocio de corretaje de bienes raíces y a la administración de propiedades, con licencia para dedicarse a dicho renglón de negocios bajo la ley que rige tal industria.[2] B.B.C. se dedicaba a gestionar el alquiler de propiedades en la zona de Humacao, Puerto Rico, concretamente, en el área de Palmas del Mar. La relación jurídica entre B.B.C y los propietarios de las referidas propiedades surgía de un contrato denominado *Property Owner's Rental Agreement*. Este era un convenio que suscribían los propietarios de las villas y apartamentos con B.B.C. para conceder a este último la facultad exclusiva de servir como agente e intermediario de aquéllos en el arrendamiento de sus propiedades a terceras personas, bien

---

[1] 13 L.P.R.A sec. 9051. Es pertinente destacar que esta sección fue derogada por la Ley Núm. 272 de 9 de septiembre de 2003. No obstante, los hechos del caso de marras son anteriores a la derogación del estatuto, razón por la cual el anterior estatuto es el que es objeto de nuestra evaluación.

[2] Sentencia del Tribunal de Circuito de Apelaciones, Apéndice, pág. 3.

fuera por períodos semanales, mensuales o anuales. A cambio de estos servicios, B.B.C. recibía una comisión que variaba según el tiempo de duración del alquiler y la temporada del año en que se efectuaba el arrendamiento.[3] Cabe destacar que bajo el Property Owner's Rental Agreement, los propietarios de las unidades podían arrendarlas por su cuenta, pero en ese caso B.B.C. tenía derecho a percibir el 15% de la renta. El Property Owner's Rental Agreement permitía al dueño de la propiedad utilizarla cuando lo deseara, siempre que ésta no se encontrara arrendada y notificara a B.B.C., con no menos de seis días de antelación, su intención de hacer uso de la propiedad.[4]

Luego de realizar una auditoría de las operaciones fiscales de B.B.C., el Departamento de Hacienda[5] señaló a la referida corporación unas deficiencias contributivas por el incumplimiento del pago de impuestos por ocupación de habitación, a corto plazo, de hoteles, hoteles de apartamentos, casas de hospedaje y moteles, según lo disponía la Sec. 2051 del Código de Rentas Internas, *supra*. El Departamento de Hacienda determinó que B.B.C. tenía la obligación de retener de los arrendatarios de las villas del complejo Palmas del Mar el impuesto sobre el canon de ocupación de habitación, establecido en el referido estatuto. Las deficiencias comprendían el período de 1994 a 1999, ambos inclusive, y ascendían a quinientos veintiún

---

[3] Si la unidad se arrendaba a corto plazo, es decir, a razón de semanas o meses, B.B.C. Realty Inc. (B.B.C.) cobraba el 25% de la renta como comisión. Por otra parte, si el alquiler era a largo plazo, B.B.C. cobraba el equivalente al canon mensual por cada año de alquiler. Sentencia del Tribunal de Circuito de Apelaciones, Apéndice, pág. 5.

[4] Sentencia del Tribunal de Circuito de Apelaciones, Apéndice, pág. 5.

[5] Cabe destacar que la Ley Núm. 272, *supra*, conocida como Ley del Impuesto sobre el Canon por Ocupación de Habitación del Estado Libre Asociado de Puerto Rico, transfiere a la Compañía de Turismo las funciones que antes recaían en el Departamento de Hacienda en cuanto a la fijación y el cobro de impuestos y cánones por ocupación de habitación. No obstante, de acuerdo con esta misma ley, todo caso que se hubiera presentado antes de su fecha de vigencia se continuaría tramitando por el Departamento de Hacienda. 13 L.P.R.A. secs. 2271–2272v.

mil tres dólares con veinte y tres centavos.[6] Dicha deficiencia fue señalada a B.B.C. el 5 de abril de 2000.[7] Según la notificación del Departamento de Hacienda, B.B.C. incumplió en retener y remitir a ésta el impuesto sobre el canon de ocupación de habitación de hotel, según lo disponía la Sec. 2051 del Código de Rentas Internas, *supra*, y su antecesora, la Ley de Arbitrios de Puerto Rico, según enmendada.[8]

El Departamento de Hacienda concluyó que B.B.C. llevaba a cabo operaciones comerciales *análogas* a las de un hotel, ya que las villas y los apartamentos que arrendó eran utilizados con regularidad y se mantenían abiertos para el alojamiento de huéspedes mediante un canon de arrendamiento. Posteriormente, el Departamento de Hacienda le cursó a la aquí recurrida una notificación y requerimiento de cobro.[9] En vista de lo anterior, B.B.C. solicitó una reconsideración y la celebración de una vista administrativa. El 22 de febrero de 2002 el Departamento de Hacienda le cursó a la parte aquí recurrida una notificación final de deficiencia para los años 1994 a 1999, ambos inclusive, por la suma de quinientos noventa y cinco mil ochenta y nueve dólares con sesenta y ocho centavos.[10] En consecuencia, el 21 de marzo de 2002 B.B.C. presentó una demanda ante el Tribunal de Primera Instancia contra el Hon. Juan A. Flores Galarza, en su capacidad de Secretario de Hacienda, en la que solicitó la cancelación de la deficiencia notificada.[11]

El Tribunal de Primera Instancia determinó que B.B.C. incumplió con su obligación de recaudar, retener y remitir

---

[6] Sentencia del Tribunal de Circuito de Apelaciones, Apéndice, pág. 2.

[7] Íd.

[8] Ley Núm. 5 de 8 de octubre de 1987 (13 L.P.R.A. ant. sec. 7001 *et seq.*).

[9] Notificación y requerimiento, Apéndice, pág. 73.

[10] Notificación final de deficiencia cursada por el Departamento de Hacienda a B.B.C., Apéndice, págs. 84–90.

[11] Demanda presentada por B.B.C. contra el Departamento de Hacienda, Apéndice, págs. 57–63.

al Departamento de Hacienda los impuestos de ocupación de habitación de las propiedades que B.B.C. administraba y arrendaba dentro del complejo privado de Palmas del Mar. El foro primario concluyó que B.B.C. llevaba a cabo sus operaciones comerciales en calidad de hostelero, dedicado a gestionar, en beneficio de los propietarios, el arrendamiento de villas y apartamentos en el referido complejo privado. El Tribunal de Primera Instancia determinó que la parte aquí recurrida incumplió con su obligación de retener a los arrendatarios el impuesto sobre el canon de ocupación de habitación en conformidad con el esquema estatutario de la Sec. 2051 del Código de Rentas Internas, *supra*.([12])

El 8 de enero de 2003 B.B.C. presentó un recurso de apelación ante el antiguo Tribunal de Circuito de Apelaciones, donde señaló la comisión de varios errores por parte del Tribunal de Primera Instancia. La parte allí apelante arguyó que el foro primario incidió al clasificar a B.B.C. como un hotel, motel, casa de hospedaje u hotel de apartamentos, según lo definía la Sec. 2051 del Código de Rentas Internas, *supra*. Asimismo, alegó que el Tribunal de Primera Instancia había errado al clasificar las operaciones de B.B.C. como *análogas* a las de un hotel e imponerle el canon de ocupación hotelera a los alquileres gestionados por los apelantes de autos. El foro intermedio apelativo expidió el recurso solicitado y dictó sentencia el 21 de agosto de 2003, en la que revocó la decisión del Tribunal de Primera Instancia. Dicho foro concluyó que el estatuto que facultaba al Departamento de Hacienda a cobrar impuestos por la ocupación de habitaciones de hoteles, hoteles de apartamento, casas de hospedaje y moteles, o aquellos negocios que operan como hosteleros —según este término era definido por el Código de Rentas Internas—([13]) no com-

---

([12]) Sentencia del Tribunal de Primera Instancia, Apéndice, págs. 373–384.

([13]) *"Hostelero* significará cualquier persona que opere un hotel, motel, hotel de apartamentos o casa de hospedaje en Puerto Rico, incluyendo, pero sin limitarse a, el

prendía las operaciones de B.B.C. Dispuso que, en ausencia de una expresión clara por la Rama Legislativa, los tribunales deben interpretar los estatutos que imponen contribuciones a favor del contribuyente.[14] Finalmente, el foro intermedio apelativo entendió que B.B.C. no era el dueño de las propiedades inmuebles que arrendaba a terceros y que más bien actuaba como un intermediario entre los propietarios de los inmuebles y sus arrendatarios.[15] Sostuvo que B.B.C. era meramente un agente de bienes y raíces de los propietarios. El foro intermedio apelativo eximió a la aquí recurrida del pago de cualquier deuda por tal concepto, notificada por el Departamento de Hacienda.

Inconforme, el Departamento de Hacienda recurre ante nos mediante el presente recurso de *certiorari*. Señala que el anterior Tribunal de Circuito de Apelaciones cometió el error siguiente:

> Erró el Honorable Tribunal de Circuito de Apelaciones al revocar al Tribunal de Primera Instancia, y así concluir que las disposiciones estatutarias y reglamentarias aplicables no contemplan las operaciones de alquiler a corto plazo que realiza B.B.C. como parte de su negocio, y por lo tanto dictaminar que B.B.C. no tenía la obligación de recaudar, retener y remitir el impuesto sobre el canon de ocupación de habitación. Petición de *certiorari*, pág. 11.

## II

A la luz de los hechos expuestos, veamos las disposiciones del Código de Rentas Internas que se pretendió aplicar al asunto ante nos y que facultaban al Departamento de Hacienda a cobrar un canon por la ocupación a corto plazo de habitaciones de hoteles, hoteles de apartamentos, casas de hospedaje y moteles. La Sec. 2051 del Código de Rentas

---

dueño o propietario de los mismos, al arrendatario, subarrendatario hipotecario, tenedor, apartamentos, casa de hospedaje o motel." 13 L.P.R.A. sec. 9051(b)(1).

[14] Recurso de Apelación presentado por B.B.C. ante el Tribunal de Circuito de Apelaciones, Apéndice, pág. 34.

[15] Sentencia del Tribunal de Circuito de Apelaciones, Apéndice, pág. 12.

Internas, *supra*, señalaba, en relación con el cobro de impuestos por ocupación de habitaciones de hoteles, hoteles de apartamentos, casas de hospedaje y moteles lo siguiente:

(a) Se impondrá, cobrará y pagará, un impuesto de nueve (9) por ciento sobre los cánones de ocupación de habitaciones de *hoteles, hoteles de apartamentos, casas de hospedaje*; excepto los *moteles* que pagarán un impuesto de siete por ciento (7%) ... cuando dichos cánones excedan de cinco (5) dólares diarios. Cuando se trate de *hoteles* autorizados por el Comisionado de Instituciones Financieras para operar salas de juego, el impuesto sobre los cánones de ocupación de habitación será igual a once (11) por ciento. Cuando se trate de *hoteles* autorizados por la Compañía de Turismo a operar como *paradores*, el impuesto sobre los cánones de ocupación de habitación será igual a siete (7) por ciento. (Énfasis suplido.)[16]

Este estatuto establece las definiciones sobre las operaciones de negocios dedicados al alquiler, administración y operación de hoteles, hoteles de apartamentos, casas de hospedaje y moteles. Definía los conceptos en cuestión de la forma siguiente:

(1) *Hostelero*. — Significará cualquier persona que *opere un hotel, motel, hotel de apartamentos o casa de hospedaje en Puerto Rico*, incluyendo, pero sin limitarse a, el dueño o propietario de los mismos, al arrendatario, subarrendatario hipotecario, tenedor, apartamentos, casa de hospedaje o motel.

. . . . . . . .

(4) *Hoteles*. — Significará todo *edificio regularmente usado y mantenido abierto* para el alojamiento de huéspedes mediante un canon de alquiler y que *derive sus ingresos del alquiler de habitaciones*. El término "hoteles" incluirá también moteles, casas de hospedaje y hoteles de apartamentos amueblados o no, para alquiler por tiempo determinado. (Énfasis suplido.)[17]

La definición de *hostelero* se refería a la persona que *operaba* un hotel, motel, hotel de apartamentos o casa de

---

[16] 13 L.P.R.A. sec. 9051(a).

[17] 13 L.P.R.A. sec. 9051(b)(1) y (4).

hospedaje, que bien podía ser el propietario del negocio, el arrendatario, el subarrendatario hipotecario o el tenedor de los apartamentos, casa de hospedaje o motel. En cuanto a la definición de *hotel*, el Código de Rentas Internas aludía a todo *edificio regularmente usado y mantenido abierto* para el alojamiento de huéspedes mediante un canon de alquiler y que derivaba sus ingresos del alquiler de habitaciones.

■ Se desprendía del estatuto que la facultad del Departamento de Hacienda para imponer y cobrar impuestos a entidades o negocios que se dedicaban al negocio de alquiler de habitaciones de hoteles, hoteles de apartamentos, casas de hospedaje y moteles, requería de una operación comercial en calidad de hostelero, o sea, operando un hotel, motel, casa de apartamentos o casa de hospedaje. La definición que brindaba este estatuto sobre lo que significaba el concepto de hotel implicaba que quien lo operaba tenía cierto tipo de control del edificio o estructura donde éste ubicaba. Este control bien podía ser de acceso a las instalaciones del hotel o de reservarse la facultad para mantener abierta la estructura o sus anexos. No es en vano que la letra del estatuto hacía referencia a un edificio "regularmente usado y mantenido abierto".

El Tribunal Supremo de Estados Unidos formuló, hace casi un siglo, una norma jurídica que hasta hoy tiene vigencia. Ese Alto Foro hizo la expresión siguiente:

> En la interpretación de estatutos que imponen contribuciones, es la práctica establecida no extender sus disposiciones, por implicación, más allá del claro alcance del lenguaje usado, o ampliar su radio de manera que comprenda materias que no han sido específicamente señaladas. *En caso de duda, se interpretan estrictamente en contra del Gobierno y a favor del ciudadano.* (Traducción y énfasis nuestros.)[18]

■ Hemos expresado que cuando el legislador se ha

---

[18] *Gould v. Gould*, 245 U.S. 151, 153 (1917).

manifestado con un lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa.[19]

■ Con relación a la interpretación de estatutos que imponen contribuciones o impuestos, hemos expresado lo siguiente:

> Principios cardinales gobiernan esta situación. El primero es que no se presume que la Legislatura hace cosas fútiles....
> El segundo principio cardinal antes aludido consiste en que, como se sabe, *la legislación contributiva no se interpreta en forma extensiva sino que debe interpretarse en forma justa y a tenor con sus propios y expresos términos.* (Énfasis suplido.)[20]

A la luz de los hechos aquí en cuestión, debemos puntualizar la intención del legislador, que surge de la Exposición de Motivos de la Ley Núm. 120 de 31 de octubre de 1994 (13 L.P.R.A. sec. 8006 *et seq.*), que aprobó y dispuso la vigencia del actual Código de Rentas Internas de Puerto Rico. Allí quedó plasmada la intención legislativa que motivó su aprobación. Mediante dicho estatuto se estableció un mecanismo uniforme de contribuciones, impuestos y recaudos para allegar fondos al Estado, en atención al justo reclamo de la clase media sobre su responsabilidad contributiva.[21]

■ El estatuto que define lo que es un corredor de bienes raíces en Puerto Rico dice, en lo pertinente, de la forma siguiente:

> (a) *Corredor de bienes raíces.* — Significará la persona natural que, poseyendo una licencia para ejercer la profesión de

---

[19] *Irizarry v. J & J Cons. Prods. Co., Inc.*, 150 D.P.R. 155 (2000); *Dorante v. Wrangler of P.R.*, 145 D.P.R. 408 (1998).

[20] *Talcott Inter-Amer. Corp. v. Registrador*, 104 D.P.R. 254, 262 (1975).

[21] La referida Exposición de Motivos de la Ley Núm. 120 de 31 de octubre de 1994 (13 L.P.R.A. sec. 8006 *et seq.*) dispone, en lo pertinente, de la manera siguiente: "Es la intención de la presente Administración lograr *reducir la carga contributiva para los individuos y las corporaciones.* Debe atenderse el reclamo de la clase media en el *justo pago de sus contribuciones.*" (Énfasis suplido.) 1994 (Parte 1) Leyes de Puerto Rico 567.

corredor de bienes raíces expedida por la Junta, *actúe como intermediario,* mediante pago o promesa de pago de cualquier compensación mutua y previamente convenida, entre las partes que acuerden llevar a cabo en Puerto Rico una transacción de compraventa, promesa de venta, opción de de compra o venta, permuta, *arrendamiento,* subasta, *administración de propiedades,* o en el ofrecimiento, promoción o negociación de los términos de una venta, opción de compraventa, promesa de venta, *alquiler, administración,* permuta de bienes raíces localizados en o fuera de Puerto Rico. (Énfasis suplido.)[22]

 Resulta evidente que el estatuto que antecede considera la operación por aquellas personas que, actuando como intermediarios, se dedican a gestionar arrendamientos de propiedades a cambio de un pago o una promesa de pago. De igual manera, el estatuto hace mención de que un corredor de bienes raíces también se refiere a aquella persona que actúa como administradora en el negocio de bienes y raíces. Este estatuto cobija también a las empresas que se dedican al negocio de corretaje de propiedades.[23]

Finalmente, es de suma importancia remitirnos a la Ley Núm. 272, aprobada el 9 de septiembre de 2003, que enmendó la citada Sec. 2051 del Código de Rentas Internas, aprobado el 31 de octubre de 1994. En su Exposición de Motivos, la referida Ley Núm. 272 dispone de la manera siguiente:

> La revisión del pago del Impuesto reveló que, a través de los años, ha existido *confusión* con relación a la *imposición, fiscalización y recaudo del Impuesto,* en específico en el procesamiento de los códigos que identifican *el tipo de contribución cobrada al hostelero* ....

. . . . . . . .

---

[22] 20 L.P.R.A. sec. 3025(a).

[23] 20 L.P.R.A. sec. 3025(c). Este inciso (c) dice de la manera siguiente:

"(c) *Empresa de bienes raíces.* — Significará toda sociedad o corporación que, poseyendo una licencia de empresa de bienes raíces expedida por la Junta, lleve a cabo cualesquiera de las actividades autorizadas por este capítulo a un corredor de bienes raíces."

... En adición [sic] a lo anterior, otro de los fines de la Ley Núm. 299(²⁴) fue el de proteger a la industria turística, *definiendo, y estableciendo de forma expresa qué se considera como cánones sujetos al impuesto de ocupación de habitaciones. Esto es para evitar situaciones donde los hoteleros no tienen certeza sobre la obligación de cobrar el impuesto sobre el canon de ocupación a sus huéspedes ....* (Énfasis suplido.) 2003 (Parte 2) Leyes de Puerto Rico 1351–1352.

█ La Ley Núm. 272, que enmendó la Sec. 2051 del Código de Rentas Internas, *supra*, se aprobó para incluir ciertos negocios de corretaje de bienes y raíces dentro de la definición de *hostelero*. A esos efectos, la referida enmienda, aprobada el 9 de septiembre de 2003, añadió a los corredores de bienes raíces dentro del grupo de personas, naturales o jurídicas, que operan ciertas hospederías.(²⁵) Al momento de suscitarse la controversia que aquí nos ocupa, la referida Ley Núm. 272 no estaba vigente.

### III

Concluimos que las operaciones comerciales de la aquí recurrida no estaban contempladas, al momento de los hechos del caso de marras, por la Sec. 2051 del Código de Rentas Internas, *supra*, que facultaba al Departamento de Hacienda a cobrar impuestos por la ocupación de habitaciones de hoteles, hoteles de apartamentos, casas de hospedaje, paradores y moteles. B.B.C. era una entidad que se dedicaba a servir como intermediaria o agente entre los propietarios de las villas y apartamentos ubicados en Pal-

---

(²⁴) La Ley Núm. 299 de 1 de septiembre de 2000 introdujo una enmienda al Código de Rentas Internas para modificar la fórmula establecida para la distribución del ingreso obtenido por concepto del impuesto. 13 L.P.R.A. sec. 9051.

(²⁵) De acuerdo con esta ley, *hostelero* significa "cualquier persona natural o jurídica que opere una hospedería en Puerto Rico incluyendo, pero sin limitarse a, el dueño, agente, propietario, operador, arrendatario, subarrendatario hipotecario o tenedor de los mismos. Para efectos de est[a ley], el término 'agente' comprenderá a aquellos individuos incluyendo, sin limitarse a, corredores de bienes raíces que gestionen el cobro de un canon de arrendamiento por concepto del alquiler de alojamientos suplementarios a corto plazo para el alojamiento de huéspedes". 13 L.P.R.A. sec. 2271(20).

mas del Mar y los arrendatarios. B.B.C. era una persona jurídica que, bajo el estatuto que regula el negocio de bienes raíces, se dedicaba al arrendamiento y a la administración de propiedades de terceros —en este caso los dueños de los inmuebles— a cambio de una comisión. La aquí recurrida no operaba como un hotel, hotel de apartamento, casa de hospedaje, motel o parador, según lo definía la Sec. 2051 del Código de Rentas Internas, *supra.*

Se desprende de la Exposición de Motivos de la Ley Núm. 272 aprobada el 9 de septiembre de 2003, que enmendó la Sec. 2051 del Código de Rentas Internas, *supra* —a su vez aprobado el 31 de octubre de 1994— que, previo a la referida enmienda, la definición de *hostelero* que proveía el estatuto no era clara. La Ley Núm. 272 se aprobó para aclarar las *confusiones con relación a la imposición, fiscalización y recaudo del impuesto.* No es hasta la aprobación de la Ley Núm. 272 que B.B.C. quedó advertido de su obligación de pagar al Estado el impuesto por ocupación de habitación.

Según expresamos en *Talcott Inter-Amer Corp. v. Registrador*, supra, es principio cardinal en nuestra jurisdicción que la legislación contributiva no se habrá de interpretar de forma extensiva. Por el contrario, ésta debe interpretarse de una forma justa, para así cumplir con sus *propios y expresos términos.* Obrar de otra forma violentaría principios básicos, de raíces firmes, en nuestra jurisprudencia y en nuestro ordenamiento civil. Hemos expresado que es regla de hermenéutica que cuando el propósito de imponer una contribución no es claro, la duda debe resolverse a favor de la no imposición de ésta.[26]

Concluimos que *en aquellos casos en que una ley que impone contribuciones, impuestos o arbitrios es ambigua, carente de un lenguaje claro que advierta sobre la intención del legislador, ésta se debe interpretar restrictiva-*

---

[26] *Central Coloso v. Descartes, Tes.*, 74 D.P.R. 481, 486 (1953).

*mente en contra del Estado y a favor del ciudadano.*(<sup>27</sup>) Por consiguiente, el Departamento de Hacienda no puede imponer el cobro de impuestos a la parte aquí recurrida.

Para los años concernidos, la parte aquí recurrida no estaba advertida afirmativamente de su obligación de retener y remitir al Departamento de Hacienda el referido impuesto, según lo disponía la Sec. 2051 del Código de Rentas Internas, *supra*. No fue hasta el 9 de septiembre de 2003 cuando quedó advertida afirmativamente de ello, al aprobarse la referida Ley Núm. 272, cuyas enmiendas a la citada Sec. 2051 del Código de Rentas Internas incluyeron clara y expresamente ciertas actividades de bienes y raíces, realizadas por B.B.C. Por tal razón, de 1994 a 1999, ambos inclusive, B.B.C. no tenía obligación de retener y remitir los impuestos por ocupación de habitación hotelera al Departamento de Hacienda.

No se puede aplicar la Ley Núm. 272, aprobada el 9 de septiembre de 2003, de forma retroactiva para incluir aquello que bajo la Sec. 2051 del Código de Rentas Internas, *supra*, aprobado el 31 de octubre de 1994, no se le advertía de forma clara al contribuyente.

## IV

Por los fundamentos antes expuestos, *confirmamos la sentencia recurrida, emitida por el entonces Tribunal de Circuito de Apelaciones.*

El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.

---

(<sup>27</sup>) Debemos puntualizar que este canon de interpretación restrictiva aplica sólo en aquellas instancias en las que el Estado pretende imponerle al ciudadano el cobro de una contribución, impuesto o arbitrio. Véanse: *Central Coloso v. Descartes, Tes.*, supra; *Plácido Longo & Cía. v. Sancho Bonet, Tes.*, 50 D.P.R. 160 (1936). Por otra parte, esta norma restrictiva no aplica a cualquier legislación contributiva, tal como los casos de exenciones, excepciones y alivios contributivos. Véanse: *Berwind Lines, Inc. v. Srio. de Hacienda*, 113 D.P.R. 658, 660 (1982); *Texas Co. (P.R.) Inc. v. Tribl. de Contribuciones*, 82 D.P.R. 134, 160 (1961)