La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
Nos corresponde determinar si un producto para la im-permeabilización de techos compuesto mayormente por una sustancia derivada del petróleo está exento del pago del Impuesto sobre Ventas y Uso (IVU) establecido por la Ley Núm. 117 del 4 de julio de 2006, conocida como la Ley de Justicia Contributiva. Como veremos, la solución ade-cuada de esta controversia requiere un ejercicio integral de interpretación estatutaria que no puede limitarse al exa-men aislado de las diversas secciones de las leyes y regla-mentos aplicables.
I
La peticionaria Dañosa Caribbean, Inc. (Dañosa) se de-dica a la manufactura de productos derivados del petróleo, particularmente, pero no exclusivamente, el asfalto. Los productos principales manufacturados por la peticionaria son impermeabilizantes de techo. El 27 de febrero de 2007, Dañosa solicitó al Departamento de Hacienda una exen-ción del pago del Impuesto sobre Ventas y Uso (IVU), ale-gando que la Ley Núm. 117 excluía los productos derivados del petróleo del concepto de propiedad mueble tangible su-jeto al IVU. Dado que la sustancia principal empleada en sus productos terminados es el asfalto, un derivado del pe-tróleo, Dañosa sostiene que ello le exime automáticamente del pago del IVU. Por su parte, el Negociado de Asistencia Contributiva y Consultas Especiales del Departamento de Hacienda denegó la petición de Dañosa, expresando que los productos manufacturados por la peticionaria “no se *1014 identificaban como productos derivados del petróleo”.![1]) La agencia basó su determinación en una lectura complemen-taria de la Sección 2005 del Código de Rentas Internas de 1994, vigente al momento, y el Reglamento Núm. 7249 del Departamento de Hacienda. Acto seguido, Dañosa apeló a la Secretaría de Procedimiento Adjudicativo de dicha agencia. Por su parte, el organismo apelativo administra-tivo concluyó que “no e[s] ostensible que los productos ma-nufacturados por Dañosa fueran identificados en el comer-cio como productos de petróleo; que se mercadeaban como producto de impermeabilización; que ninguno de los nom-bres comerciales de los productos se identificaban como productos de petróleo”, por lo que no estaban incluidos en-tre las exenciones al IVU.([2])
Inconforme con la determinación de la agencia, Dañosa recurrió al Tribunal de Apelaciones, que confirmó la deci-sión recurrida. Según el foro intermedio, la regla general en cuanto al IVU es que éste aplicará a todas las transac-ciones comerciales, a menos que caiga dentro de una de las excepciones establecidas. De igual forma, el tribunal enfa-tizó que los artículos derivados del petróleo excluidos del IVU estatutariamente tenían en común la característica de ser combustibles. En particular, el foro apelativo observó que el esquema estatutario contributivo vigente se basaba en la regla general que los productos que pagaran arbitrios estarían excluidos del IVU, y viceversa. Por lo tanto, recu-rrió a la parte del Código de Rentas Internas que gobierna el cobro de arbitrios, según quedó enmendado por la Ley Núm. 117. El Tribunal de Apelaciones se percató que esas secciones del Código sobre arbitrios incluían la gasolina, el combustible de aviación, el “gas oil” o “diesel oil” y otros productos derivados del petróleo. Es decir, que para evitar la doble tributación, el legislador excluyó del IVU aquellos productos que pagaban arbitrios, mientras que excluyó del *1015 pago de arbitrios aquellos productos susceptibles del IVU. Dado que los productos de Dañosa estaban excluidos del pago de arbitrios, el Tribunal de Apelaciones resolvió que éstos estaban incluidos en el concepto de propiedad mueble tangible sujeto al IVU.
En cuanto a la alegación de Dañosa de que el Regla-mento aprobado por el Departamento de Hacienda añadió de manera ultra vires el requisito de que los productos exi-midos del IVU tenían que ser comúnmente identificados como derivados del petróleo, en aparente contradicción con la Ley Núm. 117, el Tribunal de Apelaciones resolvió que la agencia no incorporó requisito adicional alguno, sino que recurrió a la sección vigente del Código de Rentas Internas sobre el cobro de arbitrios que expresamente excluía como productos sujetos al pago de arbitrios aquellos derivados del petróleo “que luego de terminados no se identifican como productos de petróleo gravados por este Subtítulo”Xa([3]) Es decir, que el Reglamento de la agencia adoptó el len-guaje inclusivo de la sección sobre el pago de arbitrios para que correspondiera con los requisitos de la exención al pago del IVU. De esa forma, como el Reglamento era compatible con la totalidad del Código de Rentas Internas se-gún quedó enmendado por la Ley Núm. 117, el Tribunal de Apelaciones resolvió que el Reglamento era válido y, por lo tanto, los productos de Dañosa estaban sujetos al pago del IVU.
Dañosa recurrió ante este Tribunal y presentó varios argumentos. En primer lugar, sostiene que la Ley Núm. 117 únicamente establece como requisito para quedar exi-mido del pago del IVU que el producto manufacturado sea un derivado del petróleo u otra mezcla de hidrocarburos. Por lo tanto, entiende que una vez se determina que la composición química de un producto lo clasifica como ma-yormente derivado del petróleo, ello es suficiente para que- *1016 dar excluido de la definición de propiedad mueble tangible sujeta al IVU.([4]) Como la ley del IVU no impone otro requi-sito, Dañosa alega que el Departamento de Hacienda actuó ultra vires al requerir, además de la composición química, que el producto se identifique comúnmente como derivado del petróleo. Insiste en que ante esa contradicción, el Re-glamento debe ceder a la voluntad legislativa. En la alter-nativa, Dañosa argumenta que el criterio reglamentario es vago y arbitrario y que las etiquetas comerciales de sus productos evidencian que éstos son derivados del petróleo, cumpliendo así el requisito reglamentario.([5])
El 21 de octubre de 2011 expedimos el auto de certiorari y solicitamos al Procurador General que, en su alegato, diera particular atención a lo planteado por la peticionaria en cuanto a la validez de la sección del Reglamento que incorporó el requisito previamente aludido, a la luz de la Ley Núm. 117. En su comparecencia, el Procurador General adelanta varios argumentos que son altamente ilustradores. En primer lugar, cuestiona el estándar de re-visión de “evidencia sustancial” propuesto por Dañosa, pues dicho estándar aplica en los procesos adjudicativos, mientras que el ataque de la peticionaria a la validez del reglamento requiere un estándar que mida el ejercicio de la facultad legislativa de la agencia. Lo que procede, por lo tanto, es determinar si el reglamento es arbitrario o capri-choso, o si se excede de lo autorizado por la legislatura.
De igual forma, el Procurador General nos invita a que analicemos el esquema contributivo del IVU en su totali- *1017 dad, haciendo referencia constante tanto a la política pú-blica que lo apoya como a las demás secciones del Código de Rentas Internas que lo complementan. Es decir, que no estudiemos únicamente las secciones del Código relaciona-das con el IVU, sino que hagamos una lectura integral del Código en su totalidad, particularmente la parte referente a los arbitrios. De esa lectura integrada, el Procurador de-riva varias conclusiones: (1) que el elemento común para la exención del pago del IVU a productos derivados del petró-leo es que sirvan como combustibles; (2) que el diseño le-gislativo de incluir ciertos productos en el pago de arbitrios mientras se excluyen del IVU es evitar la doble tributa-ción, y (3) que el requisito de que el producto eximido se identifique comúnmente como derivado del petróleo se in-cluyó en el Reglamento del Departamento de Hacienda precisamente porque estos productos así identificados es-tán sujetos al pago de arbitrios.
II
Antes de aprobarse la Ley Núm. 117 del 4 de agosto de 2006, la mayoría de los productos vendidos en Puerto Rico estaban sujetos al pago de arbitrios generales, entre estos la gasolina y otros combustibles derivados del petróleo. El tema del pago de contribuciones producto de la venta de estos productos derivados del petróleo ha sido una constante en nuestro ordenamiento tributario. Mediante la Ley Núm. 2 de 20 de enero de 1956,([6]) se estableció un impuesto sobre artículos de uso y consumo en Puerto Rico que incluyó la gasolina y otros combustibles como el gas oil y el diesel o¿Z.([7]) Igualmente presente han estado las exenciones al pago de contribuciones de algunos de estos *1018 productos.([8]) En 1987, se aprobó la Ley de Arbitrios de Puerto Rico que derogó la Ley Núm. 2 y estableció un es-quema tributario integral.([9]) La Sección 2.001 de esa Ley establecía:
Se impondrá, cobrará y pagará, a los tipos prescritos en las secciones 2.002 a 2.010, inclusive, de este Capítulo, un arbitrio sobre el azúcar, el cemento fabricado localmente o introducido en Puerto Rico, los cigarrillos, la gasolina, el combustible de aviación, el “gas oil” o “diesel oil”, el petróleo crudo, los produc-tos parcialmente elaborados y terminados derivados del petró-leo, así como sobre cualquier otra mezcla de hidrocarbu-ros ....([10])
Por otra parte, la Ley de Arbitrios de 1987 distinguía entre aquellos productos identificados específicamente como combustibles —gasolina, combustible de aviación, “gas oil” y “diesel oil” — ([11]) y otros derivados del petróleo.[12]) De igual forma, por razones de política pública la ley ex-cluyó algunos de estos productos del pago de arbitrios.([13]) Otros productos, como el asfalto, el etano y butano, entre otros, también fueron excluidos del pago de arbitrios, aun-que con efectos distintos de los que correspondían a los productos mencionados en la Sección 2.006.[14]) Es decir, no se trató de igual forma a todos los derivados del petróleo, *1019 pues la exclusión total respondía más a cuestiones de polí-tica pública que a la mera composición química de los productos.
El esquema contributivo cambió en 1994 con la aprobación del Código de Rentas Internas, vigente al momento de la controversia de autos/[15]) Este Código derogó la Ley de Arbitrios de 1987 e incluyó un subtítulo dedicado exclusivamente al tema de los arbitrios/[16]) De esta forma, el cobro de arbitrios pasó a ser una parte de un esquema contributivo más amplio cuyos diferentes componentes se complementarían entre sí.
La Sección 2005 del Código de Rentas Internas de 1994 estableció un arbitrio general sobre artículos vendidos en Puerto Rico:
Se impondrá, cobrará y pagará a los tipos prescritos en la[s] sees. 9006 a 9015, inclusive, de esta Parte un arbitrio sobre el azúcar, las bebidas carbonatadas, el cemento fabricado local-mente o introducido en Puerto Rico, los cigarrillos, la gasolina, el combustible de aviación, el “gas oil” o “diesel oil”, el petróleo crudo, los productos parcialmente elaborados y terminados de-rivados del petróleo, así como sobre cualquier otra mezcla de hidrocarburo, los vehículos de motor .... La aplicación de este impuesto estará sujeta a las exenciones establecidas en el Ca-pítulo 866 de esta Parte/[17])
Como se puede notar de lo anterior, el texto estatutario original, en cuanto a los arbitrios sobre la gasolina y demás derivados del petróleo, ha perdurado a través del tiempo. Igualmente constantes han sido las excepciones de todo tipo de tributación concedidas a algunos productos de pe-tróleo utilizados para ciertos fines específicos, como la ge- *1020 neración de electricidad por la Autoridad de Energía Eléc-trica y la exportación/[18])
Al igual que la Ley de Arbitrios de 1987, el Código de Rentas Internas de 1994 dividió en dos secciones separadas, pero secuenciales, el trato contributivo correspondiente a la gasolina y demás combustibles, y la de los otros productos derivados del petróleo/[19]) Ahora bien, desde 1994 están excluidos del pago de arbitrios aquellos derivados del petróleo y cualquier otra mezcla de hidrocarburos “que luego de terminados no se identifican como productos de petróleo gravados por esta Parte”.([20]) Es decir, fueron excluidos del pago de arbitrios algunos productos que, a pesar de ser derivados del petróleo por razones de su composición química, no eran identificados como tal, por lo cual serían tratados de manera distinta. Finalmente, cabe destacar que tras varias enmiendas a las Secciones 2005, 2010 y 2011 del Código de Rentas Internas, el mandato legislativo se mantuvo igual/[21]) Posteriormente, las Secciones 2010 y 2011 del Código de 1994 pasaron a ser las Secciones 2009 y 2010, respectivamente.
La Ley Núm. 117 de 4 de julio de 2006, conocida como la Ley de la Justicia Contributiva, enmendó varias disposiciones del Código de Rentas Internas de 1994 para, entre otras cosas, crear un Impuesto sobre Ventas y Uso (IVU). Por eso, las secciones relativas al IVU deben anali- *1021 zarse e interpretarse como parte del Código de Rentas In-ternas, según quedó enmendado, y no como un esquema tributario aislado e independiente. Veamos ahora más de cerca la Ley Núm. 117.
La Exposición de Motivos de la ley, en lo pertinente, lee como sigue:
El arbitrio general se sustituye por un IVTJ. Los productos que antes estaban sujetos al arbitrio general estarán sujetos al IVU. Se mantienen arbitrios sobre ciertos artículos que, por sus peculiaridades, requieren disposiciones separadas, estos son: los cigarrillos, la gasolina y otros combustibles, los vehí-culos y las bebidas alcohólicas.
Las exenciones al IVU se limitan a medicamentos recetados y otras exenciones vinculadas con el desarrollo económico de Puerto Rico o inherentes a ion sistema de IVU, entre ellas la materia prima para la manufactura, productos exportados y los combustibles comprados por la Autoridad de Energía Eléc-trica para la producción de energía eléctrica.
Por otra parte, la asignación de los impuestos de venta sobre gasolina y otros combustibles ...se mantienen.([22])
Según se deduce claramente de la Exposición de Moti-vos, el objetivo perseguido por la Ley Núm. 117 era crear un esquema contributivo que combinara el cobro de arbi-trios con el pago del IVU. De esa manera, la mayoría de los productos vendidos en Puerto Rico, salvo algunos que que-daron excluidos totalmente por razones de política pública, estaría sujeto a una de estas contribuciones. Para ello, la Asamblea Legislativa atemperó el Subtítulo de arbitrios (B) con el nuevo subtítulo del IVU(BB).
El Artículo 16 de la Ley Núm. 117 enmendó varias sec-ciones del Subtítulo B del Código de Rentas Internas, rela-tivo al cobro de arbitrios. Entre las secciones que tratan sobre los productos derivados del petróleo, la Sección 2005 del Código de Rentas Internas, supra, quedó modificada de la manera siguiente:
*1022 Se impondrá, cobrará y pagará, a los tipos establecidos en las secciones 2006 a 2010, inclusive, de este Subtítulo un ar-bitrio sobre el cemento fabricado localmente o introducido en Puerto Rico, productos plásticos, la introducción o fabricación de cigarrillos, la gasolina, el combustible de aviación, el “gas oil” o “diesel oil”, el petróleo crudo, los productos elaborados y terminados derivados de petróleo, así como sobre cualquier otra mezcla de hidrocarburos, y los vehículos de motor. El ar-bitrio fijado regirá si el artículo ha sido introducido, vendido, consumido, usado, traspasado o adquirido en Puerto Rico, y se pagará una sola vez, en el tiempo y en la forma especificados en el Capítulo 6 de este Subtítulo. La aplicación del impuesto estará sujeto a las exenciones concedidas en el Capítulo 3 de este Subtítulo. 13 L.P.R.A. see. 9010 (ed. 2007).
Por otra parte, la Ley Núm. 117 también enmendó las Secciones 2009 y 2010 (antes 2010 y 2011), las que atien-den, respectivamente y de manera más específica, el cobro de arbitrios para la gasolina y otros combustibles, así como el petróleo crudo y otros derivados del petróleo. La nueva Sección 2009 del Código de Rentas Internas atendió espe-cíficamente el caso de los “combustibles”, tales como la ga-solina, el combustible de aviación y el “gas oil” o “diesel oil”.([23]) En particular, la Sección 2009 enmendada definió detalladamente qué constituía un combustible y excluyó varios gases licuados como el propano, butano, etano, eti-leno, butileno y cualquier mezcla de los mismos.([24]) Ahora bien, el Artículo 16 de la Ley Núm. 117 añadió una parte importante a la Sección 2009: “Los artículos, incluyendo la gasolina, el combustible de aviación y el ‘gas oil’ o ‘diesel oil’ o cualquier otro combustible, sujeto a las disposiciones de esta sección estarán exentos de los impuestos de venta y uso establecidos en la Parte TV-A de este subtítulo”.([25]) De esa manera, a la gasolina y demás combustibles se les apli-caría un arbitrio pero estarían excluidos del IVU para evi-tar la doble tributación.
*1023 Por su parte, la Sección 2010 enmendada atendió el co-bro de arbitrios al petróleo crudo y otros derivados de pe-tróleo que no cayeran bajo la clasificación de combustibles de la Sección 2009:([26])
Además de cualquier arbitrio fijado en esta parte, se impon-drá, cobrará y pagará un impuesto por el uso en Puerto Rico de petróleo crudo, de productos parcialmente elaborados o de productos terminados derivados del petróleo y de cualquier otra mezcla de hidrocarburos a los tipos filados en la siguiente tabla .,..([27])
Esta regla general de tributación a los productos deri-vados del petróleo tendría ciertas exenciones:
(c) Exclusiones del gravamen — El impuesto fijado en esta sección no será aplicable al:
(1) Petróleo crudo, productos parcialmente elaborados, los productos terminados derivados del petróleo, ni a cualquier otra mezcla de hidrocarburos utilizado por la Autoridad de Energía Eléctrica para generación de electricidad.
(5) Petróleo crudo, productos parcialmente elaborados, productos terminados derivados del petróleo o cualquier otra mezcla de hidrocarburos utilizada en la elaboración de artícu-los que luego de terminados no se identifican como productos de petróleo gravados por esta parte. Toda persona cubierta por esta exención deberá tener el reconocimiento y autorización previa del Secretario [de Hacienda].
(9) Los artículos, incluyendo el petróleo crudo, los produc-tos parcialmente elaborados o los productos terminados deri-vados del petróleo y de cualquier otra mezcla de hidrocarbu-ros, sujetos a las disposiciones de esta sección estarán exentos de los impuestos de venta y uso establecidos en la Parte TV-A de este subtítuloj([28])
De lo anterior surgen con meridiana claridad dos asuntos fundamentales. Primero, que la exclusión del pago *1024 de arbitrios de los productos derivados del petróleo se li-mitó a aquellos que no se identificaran como tal. Es decir, que si el artículo en cuestión, a pesar de tener una compo-sición química que lo clasifica como un producto derivado del petróleo, no se identifica como tal, estará excluido del pago de arbitrios. En segundo lugar, y como consecuencia de lo anterior, surge que los artículos que luego de termi-nados no se identifican como productos derivados del pe-tróleo no estarán excluidos del pago del IVU. De esta ma-nera, un artículo manufacturado con productos derivados del petróleo que no se identifica como tal estará excluido del arbitrio pero estaría incluido en el IVU.
Tras modificar el esquema del cobro de arbitrios dispuesto en el Subtítulo B, la Ley Núm. 117 introdujo un nuevo Subtítulo BB para estructurar el cobro del impuesto sobre ventas y uso. Por su importancia, reproducimos las secciones relevantes a la controversia de autos:
(dd) — Partida Tributable
Propiedad mueble tangible, servicios tributables, derechos de admisión y transacciones combinadas.!([29])
(jj) — Propiedad mueble tangible Incluye artículos o propiedad mueble que puede ser vista, pesada, medida o palpable, o es de cualquier forma perceptible a los sentidos, o que es susceptible de apropiación, incluyendo programas de computadoras y tarjetas prepagadas de llama-das, entre otros. El término “propiedad mueble tangible” ex-cluye el dinero o el equivalente de dinero, acciones, bonos, no-tas, pagarés, hipotecas, seguros, valores u otras obligaciones; automóviles, propulsores, omnibuses y camiones; los intangibles; la gasolina, combustible de aviación, el “gas oil” o “diesel oil”, el petróleo crudo, los productos parcialmente elaborados y terminados derivados del petróleo, y cualquier otra mezcla de hidrocarburos; la electricidad generada por la Autoridad de Energía Eléctrica o cualquier otra entidad generadora de elec-tricidad; y el agua suplida por la Autoridad de Acueductos y Alcantarillados.([30])
*1025 Como puede notarse, al enmendar el Subtítulo B y aña-dir el Subtítulo BB del Código de Rentas Internas de 1994, la Asamblea Legislativa diseñó un sistema contributivo ba-sado, en parte, en una combinación de arbitrios y del IVU. Por eso la legislatura utilizó un texto virtualmente idéntico para la Secciones 2005, 2010(a) y 2010(c) (Subtítulo B - Arbitrios) y la Sección 2301(jj) (Subtítulo BB - IVU). Por un lado, la Sección 2010(c) incluyó en el pago de arbitrios los productos derivados del petróleo, excluyendo los que no se identifican como tal. Por otro lado, esta sección excluyó del pago del IVU a los productos que sí se identifican como derivados del petróleo. En esa misma dirección, la Sección 2301(jj) excluyó del pago del IVU los productos incluidos en la Sección 2005 y no excluidos por la Sección 2010(c). De esa manera se intentó precisar la combinación arbitrios-IVU incluyendo en uno lo que se excluía del otro.
Por su parte, en el uso de sus amplios poderes de reglamentación,![31]) el Secretario de Hacienda aprobó el Reglamento Núm. 7249 de 14 de noviembre de 2006.([32]) Según el preámbulo, “[e] ste Reglamento recoge las disposiciones del Subtítulo BB del Código y otras disposiciones complementarias del Código y provee, en el mayor grado de detalle posible, explicaciones prácticas y ejemplos de transacciones con el fin de dar certeza en cuanto a la aplicación del IVU”.([33]) Es decir, que al adoptar el Reglamento, se tomó en consideración tanto el Subtítulo BB (IVU) como el Subtítulo B (Arbitrios), de manera que el Reglamento canalizara la totalidad del esquema contributivo establecido *1026 por el Código de Rentas Internas, según enmendado por la Ley Núm. 117.
El Artículo 2301 — l(jj)(2) del Reglamento Núm. 7249 excluye del pago del IVU:
[L]a gasolina, el combustible de aviación, el “gas oil” o “diesel oil”, el petróleo crudo, los productos parcialmente elabora-dos y terminados derivados del petróleo, y cualquier otra mez-cla de hidrocarburos, tales como propano, butano, etano, propileno, butileno y cualquier mezcla de los mismos. Sin embargo, los productos parcialmente elaborados y productos ter-minados derivados del petróleo que luego de terminados co-múnmente no se identifiquen como productos de petróleo, se considerarán propiedad mueble tangible!([34])
Según la peticionaria Dañosa, esta última oración de la Sección 2301-l(jj)(2) del Reglamento es ultra vires, pues incorpora un elemento que no fue establecido por la legis-latura; entiéndase, que el producto derivado del petróleo no se identifique comúnmente como tal. Si bien es cierto que la Sección 2301(jj) del Subtítulo BB del Código de Ren-tas Internas no incluye ese elemento, no podemos olvidar que la Sección 2010(c)(5) del Subtítulo B sí lo menciona. De esa forma, el Reglamento tomó en consideración la totali-dad del Código de Rentas Internas y logró establecer con mayor precisión lo que la Asamblea Legislativa quiso ha-cer: excluir del IVU únicamente aquellos productos deriva-dos del petróleo que pagan arbitrios y aquellos cuya exclu-sión estuviese basada en consideraciones de política pública. No podemos olvidar que el Reglamento Núm. 7249 se fundamentó en la totalidad del Código de Rentas Inter-nas de 1994 y no únicamente en el Subtítulo BB. En ese sentido, el Secretario podía incorporar a la Sección 2301-l(jj)(2) el texto estatutario utilizado en la Sección *1027 2010(c)(5) del Subtítulo B. De esta manera, además de evi-tar la doble tributación, se impide que un producto quede incorrectamente libre de toda contribución, salvo los casos expresamente excluidos tanto del arbitrio como del IVU. Por último, cabe destacar que el Código de Rentas Internas de 2011 mantuvo el esquema contributivo previamente explicado.([35])
En cuanto al Reglamento Núm. 7249, no podemos per-der de perspectiva que éste debe conformarse a la totali-dad del Código de Rentas Internas, según quedó enmen-dado por la Ley Núm. 117, y no únicamente al Subtítulo BB. Por eso, el Reglamento incorporó el texto estatutario empleado en otras partes del Código, de manera que se pudiese aplicar adecuadamente el esquema contributivo adoptado por la Legislatura. Por lo tanto, es forzoso con-cluir que el Reglamento no es ultra vires. De igual forma, no podemos olvidar que en nuestro ordenamiento tributa-rio, si bien se aplicará una interpretación restrictiva en contra del Estado y a favor del ciudadano cuando haya duda sobre el cobro de una contribución, en el caso especí-fico de exenciones, excepciones y alivios contributivos, la norma interpretativa es que "toda duda debe resolverse en contra de la existencia de la exención”.!([36])
En resumen, mediante las enmiendas introducidas por la Ley Núm. 117, se adoptó un esquema contribu- *1028 tivo que combinó arbitrios con el Impuesto sobre Ventas y Uso. En particular, se diseñó un sistema basado, primera-mente, en la exclusión de ciertos productos de toda carga contributiva y, en segundo lugar, en evitar la doble tribu-tación del resto de los productos. Así, todo producto in-cluido en el pago de arbitrios estaría excitado del IVU. En sentido contrario, los productos excluidos del cobro de ar-bitrios estarán sujetos al IVU.
En virtud de lo anterior, resolvemos que los productos cuya composición química los clasifica como derivados del petróleo pero que comúnmente no se identifican como tal, estarán sujetos al pago del Impuesto sobre Ventas y Uso establecido en el Código de Rentas Internas.
III
En el caso de autos, los productos manufacturados por Dañosa son, en términos de su composición química, deri-vados del petróleo. No obstante, a juicio del Departamento de Hacienda, estos productos terminados —utilizados ma-yormente para sellar techos— no se identifican común-mente como tal. De ser así, no estarían excluidos del pago del IVU por disposición de las Secciones 2010(c)(5) y 2301(jj) del Código de Rentas Internas y el Artículo 2301-l(jj)(2) del Reglamento Núm. 7249. En cuanto a ello, la peticionaria adelanta dos argumentos.
Expone, en primer lugar, que el criterio de “que luego de terminados comúnmente no se identifiquen como produc-tos del petróleo” es vago y carece de parámetros/[37]) Por lo tanto, se presta para una interpretación y aplicación arbi-traria y caprichosa. En la alternativa, sostiene que el que las etiquetas de sus productos identifiquen a los mismos como derivados del petróleo cumple la exigencia reglamentaria.
*1029 En cuanto al primer planteamiento, hay que hacer un señalamiento de entrada. No podemos olvidar que el crite-rio impugnado de “que luego de terminados no se identifi-quen como productos del petróleo” existe tanto estatutaria-mente en la Sección 2010(c)(5) del Código de Rentas Internas de 1994 —Sección 3020.07(i)(5) del Código de 2011— como reglamentariamente en el Artículo 2301-l(jj)(2) del Reglamento Núm. 7249. Por lo tanto, no pode-mos abordar el asunto exclusivamente desde la óptica de impugnación de reglamentos, pues se está cuestionando igualmente el diseño legislativo.
En el contexto estatutario, “una ley es nula por vaguedad si sus prohibiciones no están claramente definidas”.([38]) Hemos resuelto que una ley adolece de vaguedad si “(1) una persona de inteligencia promedio no queda debidamente advertida del acto u omisión que el estatuto pretende prohibir o penalizar, (2) se presta a la aplicación arbitraria y discriminatoria, y (3) interfiere con el ejercicio de derechos fundamentales garantizados por la Constitución”. (Enfasis suplido).([39]) Ahora bien, la doctrina de vaguedad aplica a estatutos de carácter punitivo que prohíben o penalizan. Ese no es el caso ante nuestra consideración. La peticionaria Dañosa, al alegar que el criterio escogido por la Asamblea Legislativa y, por consiguiente, por el Secretario de Hacienda, es arbitrario, caprichoso y potencialmente discriminatorio, está haciendo un planteamiento de debido proceso de ley e igual protección de las leyes. En nuestro ordenamiento, este tipo de impugnación de reglamentación socioeconómica está sujeta a un análisis de racionalidad mínima. ([40])
Al precisar si una agencia ha excedido su autori- *1030 dad en el ámbito reglamentario, corresponde al tribunal evaluar: (1) si a la agencia se le delegó poder de reglamen-tación; (2) si la actuación administrativa está autorizada por ley; (3) si la reglamentación promulgada está dentro de los poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley habilitadora de la agencia y la L.P.A.U., y (5) si la reglamentación es arbi-traria o caprichosa.([41]) Es decir, en cuanto a la validez de la reglamentación, aplicaremos un análisis de razonabilidad. Ahora bien, en el contexto de un proceso de revisión admi-nistrativa, el estándar aplicable es el de evidencia sustan-cial en el marco de una amplia deferencia al peritaje de la agencia. Evidentemente, el Departamento de Hacienda es la agencia con el peritaje adecuado para atender este tipo de controversia, por lo que los tribunales nos abstendremos de interferir con sus determinaciones de hecho salvo que éstas no tengan apoyo en la evidencia sustancial.
En el caso de autos, el Departamento de Hacienda determinó que los productos de impermeabilización de techos de Dañosa no se identifican comúnmente como productos derivados del petróleo. Además, al repasar el desarrollo estatutario de las contribuciones impuestas sobre productos derivados del petróleo, notamos un denominador común entre los productos mencionados: todos son combustible o sustancias relacionadas. Evidentemente, el producto manufacturado por la peticionaria queda fuera de esa definición. Pero lo que es más, ante el amplio grado de deferencia que los tribunales debemos a las determinaciones de las agencias administrativas en estos asuntos, no podemos concluir que la decisión de la agencia sea irrazonable, arbitraria, caprichosa o discriminatoria. Por el contrario, es perfectamente razonable que el Departamento de Hacienda concluya que un sellador de techo compuesto mayormente por asfalto no es un producto comúnmente iden- *1031 tificado como derivado del petróleo, para propósitos de una ley que, al identificar los productos derivados de petróleo, se refiere en todo caso a productos que comparten la carac-terística de ser combustibles u otros relacionados. Se trata de una definición con un alto contenido de política pública contributiva que debemos respetar. Dañosa no nos ha puesto en posición de desviarnos de esa conclusión. El que las etiquetas de algunos de los productos de Dañosa se auto identifiquen como derivados del petróleo no derrota la determinación de hecho en contrario de la agencia.
En virtud de lo anterior, concluimos que el Tribunal de Apelaciones no erró al confirmar la decisión de la agencia de denegar la solicitud de Dañosa de que se le eximiese del pago del TVU. Por lo tanto, procede confirmar la decisión del foro apelativo.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez no intervino.

(1) Sentencia del Tribunal de Apelaciones, Apéndice, pág. 125.

(2) íd., pág. 126.

(3) (Énfasis suplido). Id., pág. 129, citando la Sección 2010 del Código de Rentas Internas de 1994.

(4) En su petición de certiorari, Dañosa explica con detalle el proceso de manu-factura de sus productos, así como la naturaleza física y química de éstos. En particular, nos ofrece como ejemplo varios de sus productos cuya composición química oscila entre 49.3% y 79.7% de asfalto (bitumen) y otros productos derivado del petró-leo como el polímero EBE (SBS), nafta, butadieno, poliéster, entre otros. Petición de certiorari, pág. 4. Por eso nos solicita que ignoremos el ejemplo utilizado en el Re-glamento del Departamento de Hacienda en cuanto al asfalto utilizado en la cons-trucción de carretera, pues dicho producto solamente tiene un 7% de asfalto. Id., esc. 20.

(5) Apéndice, pág. 28.

(6) Ley de Impuesto Sobre Artículos de Uso y Consumo de Puerto Rico, 13 L.P.R.A. see. 4001 et seq. (ed. 1976).

(7) íd., sees. 4030 y 4031, Artículos 30 y 37, respectivamente.

(8) Véase, por ejemplo, el Artículo 30(b) de la Ley Núm. 2, supra, sec. 4030(b), que eximía del pago de este impuesto a gasolina que era utilizada por la Guardia Nacional o el gobierno federal, se exportaba fuera de la isla o se catalogaba como contaminada.

(9) Ley Núm. 5 del 8 de octubre de 1987, Leyes de Puerto Rico 921.

(10) (Énfasis suplido). íd., Sección 2.001, págs. 927-928.

(11) íd., Sección 2.005, pág. 929.

(12) “Petróleo crudo, Productos Parcialmente Elaborados y Productos Termina-dos Derivados del Petróleo y Cualquier Otra Mezcla de Hidrocarburos”, íd., Sección 2.006. Ahora bien, como veremos más adelante, el elemento común entre todos estos productos es que pueden ser utilizados como combustibles.

(13) Véase íd., Sección 2.006(b), págs. 930-931: productos utilizados por la Au-toridad de Energía Eléctrica o el gobierno federal, productos para la exportación y productos a ser utilizados en refinerías o petroquímicas, entre otros. Como veremos, estas excepciones aplicarán a todo tipo de contribución, por lo que no les aplica la regla de que el producto que no paga arbitrios pagará el TVU, y viceversa.

(14) íd., Sección 2.008, págs. 933-934.

(15) Ley Núm. 120 de 31 de octubre de 1994 (Código de Rentas Internas).

(16) Subtítulo B. Como veremos, la Ley Núm. 117 enmendaría el Código de Rentas Internas e incorporaría las secciones relativas al IVU como Subtítulo BB, denotando así un vínculo inexorable entre el cobro de arbitrios y el pago del IVU.

(17) (Énfasis suplido). Sección 2005 del Código de Rentas Internas de 1994, 13 L.P.R.A. see. 9005 (ed. 1996).

([18]) Sección 2011(b), 13 L.P.R.A. sec. 9011(c) (ed. 1996). La Asamblea Legislativa también ha sido consecuente en excluir de esta lista de productos del petróleo algu-nas sustancias como el propano, butano, butileno, entre otros. Sección 2010(b), 13 L.P.R.A sec. 9010(b) (ed. 1996). Estas secciones responden a la numeración original del estatuto.

([19]) Secciones 2010 y 2011 del Código de Rentas Internas de 1994, 13 L.P.R.A. sees. 9010 y 9011 (ed. 1996).

([20]) (Enfasis suplido). Sección 2011(b)(5) de la numeración original, ahora Sec-ción 2010(c)(5), 13 L.P.R.A. sec. 9010(c)(5) (ed. 1996). Además, dicha sección dispone que “[t]oda persona cubierta por esta exención deberá tener el reconocimiento y autorización previa del Secretario [de Hacienda]”. (Enfasis suplido). Id.

(21) Véanse las Leyes Núm. 78 de 31 de mayo de 1998 y Núm. 200 de 30 de julio de 1999 que incorporaron otros productos eximidos del pago de arbitrios. Ninguno afectó el tipo de producto manufacturado por la peticionaria Dañosa.

(22) (Énfasis suplido). Exposición de Motivos de la Ley Núm. 117, págs. 2-3.

(23) 13 L.P.R.A. see. 9010 (ed. 2007).

(24) íd., sec. 9010(b).

(25) (Énfasis suplido). íd., see. 9010(d).

(26) Los productos de la peticionaria coinciden más con los productos identifica-dos en esta sección.

(27) 13 L.P.R.A. sec. 9011(a) (ed. 2007).

(28) (Énfasis suplido). íd., sec. 9011(c).

(29) íd., sec. 9091(dd).

(30) (Énfasis suplido). íd., sec. 9091(jj).

([31]) Este poder de reglamentación ha sido delegado consecuentemente por la Asamblea Legislativa. Véase, por ejemplo, el Artículo 78 de la Ley Núm. 2 de 20 de enero de 1956. En la Ley Núm. 117, ese poder está recogido en 13 L.P.R.A. sees. 9091b y 9093(a) (ed. 2007), entre otros.

([32]) Reglamento para Implantar las Disposiciones del Subtítulo BB - Impuesto sobre Ventas y Uso de la Ley Núm. 120 de 31 de octubre de 1994, según enmendada, conocida como “Código de Rentas Internas de Puerto Rico”.

([33]) (Énfasis suplido). íd., pág. 1.

([34]) (Énfasis suplido). íd., Artículo 2301(jj)(2), pág. 33. Acto seguido, el Regla-mento ofrece como ejemplo de las exclusiones provistas por esta sección el asfalto utilizado en las carreteras: “El asfalto, aunque es un producto derivado del petróleo, se considerará propiedad mueble tangible, ya que éste luego de terminado no se identifica como producto de petróleo”. Id.

(35) Mediante la Ley Núm. 1 de 31 de enero de 2011, la Asamblea Legislativa aprobó un nuevo Código de Rentas Internas. El cobro de arbitrios está establecido por el Subtítulo C, mientras que el IVU se codifica en el Subtítulo D. En primer lugar, la Sección 3020.01 del Código de 2011 mantiene el arbitrio a la gasolina, ciertos combustibles y los productos derivados del petróleo, manteniendo, para evitar la doble tributación, la exclusión de estos productos en cuanto el IVU. De igual forma, la Sección 3020.07(i)(5) excluye del arbitrio los productos derivados del petróleo “que luego de terminados no se identifiquen como productos de petróleo gravados por este subtítulo. Toda persona cubierta por esta exención deberá tener el reconocimiento y autorización previa del Secretario”. De esa forma, al excluir estos productos del ar-bitrio general, se permite su tributación bajo el IVU.

(36) Lever Bros. Export Corp. v. Alcalde S.J., 140 D.RR. 152, 161-162 (1996). Véanse, además, Yiyi Motors, Inc. v. E.L.A., 177 D.P.R. 230, 250-251 (2009) y B.B.C. Realty v. Secretario Hacienda, 166 D.P.R. 498, 508-512 (2005).

(37) (Énfasis suprimido). Petición de certiorari, pág. 7.

(38) Pacheco Fraticelli v. Cintrón Antonsanti, 122 D.P.R. 229, 239 (1988).

(39) (Énfasis suplido). íd., págs. 239-240.

(40) Pueblo Int’l., Inc. v. Srio. de Justicia, 122 D.P.R. 703, 721-722 (1988), Op. concurrente del Juez Asociado Negrón García.

(41) Pérez v. Com. Rel. Trab. Serv. Pub., 158 D.P.R. 180, 187 (2002).